MANFORD SCOTT, Appellee, v. ROSCOE HANSEN, Appellant.

No. 44834.

JANUARY 16, 1940.

REHEARING DENIED MAY 18, 1940.

Baker & Parrish and George A. Heald, Jr., for appellee.

Cornwall & Cornwall, for appellant.

RICHARDS, J.—At about 5:30 p. m. on August 24, 1936, as

defendant was driving his automobile upon a paved highway outside any city or town, the car struck a cow that was crossing the road. Riding with defendant as his guest was plaintiff. The two occupied the front seat, defendant on the left side behind the wheel, plaintiff on the right. When defendant stopped the car following the contact with the cow plaintiff found that his right arm was fractured. The testimony was controversial whether when the cow was hit plaintiff was riding along with his right arm extending outside the open window of the right-hand door of the car. To recover damages on account of his injury plaintiff instituted the instant case grounding his cause of action upon allegations that at the time of the accident defendant was being reckless in the operation of the car and that such manner of operation was the proximate cause of the accident and injury. The jury returned a verdict for plaintiff and thereon was rendered a judgment against defendant from which he has appealed.

At the conclusion of the evidence defendant moved for a directed verdict. One of the grounds was that in the record there was no competent evidence to show that defendant was guilty of recklessness in the operation of the car which was the proximate cause of the collision and injuries to plaintiff. Defendant claims that upon this ground the motion should have been sustained and that consequently the court erred in ordering that it be overruled. Plaintiff specified that there was reckless operation in that defendant failed to reduce the speed of the car as he approached the cattle and continued to drive into the cattle at an excessive and reckless rate of speed. Whether there was competent evidence showing that there was such failure and such continued manner of driving into the cattle as plaintiff specified, and if so whether, in view of the attendant facts and surrounding circumstances, a jury would have been warranted in finding that when the accident happened defendant was driving at a rate of speed that evidenced recklessness of operation of the car, appear to be the questions raised by the above-stated ground. In seeking the answers it seems needful that we review the evidence.

If, turning to the record, we confine ourselves entirely to the factual situation plaintiff himself developed by direct examination of several of his witnesses it becomes apparent that he purposely showed, and without contradiction by any witness, certain physical facts and some additional matters, which we summarize in the following paragraph:

The highway extended east and west. The accident occurred 2½ miles west of Strawberry Point upon a stretch of about 40 or 50 feet of level paving laid on a 6-foot fill. On each side of the level paving were farm buildings. One of the two tenants of the farm on which were these buildings, having opened a pasture gate on the north side of the level paving, was herding 14 cows and a bull out of the pasture and across the road in order that the evening milking might be done in the yards on the south side of the highway. But the evidence has to do with but 4 cows that plaintiff and his witnesses testified had ascended the north bank of the fill and had come upon the roadway proper. The other tenant was standing on the pavement watching for traffic and directing the movement of the cattle. Terminating at the level stretch of paving there was a gradual slope of the highway toward the west for a distance of between a quarter and a half mile. The grade was 3 percent excepting that midway the paving leveled out for a short distance. Defendant's car traveling west descended this slope in approaching the place of the accident. Plaintiff, according to his testimony, saw 4 cows upon the first-mentioned level stretch of paving when the car was six tenths of a mile east thereof, and he stated that the speedometer was then registering 80 miles per hour. He also testified, without having again looked at the speedometer, that in his opinion the same speed was maintained until within three or four hundred feet of the cows, when defendant pulled over to the left side of the road as far as he could. But the car, then at least partly out on the south shoulder of the highway, struck the cow's left front shoulder as she was proceeding across the road in a southwesterly direction. Defendant drove on past the cow and parked the car on the north shoulder of the highway. Plaintiff and defendant

40

then got out of the car and walked back to the vicinity of the buildings. The cow had broken ribs, her hide was torn and she was bleeding. It was the right front corner of the car that struck her. Plaintiff also showed that as the result of the contact with the cow the condition of the car was as follows: The right front fender was smashed down, the right headlight was jammed some, and the bumper and the right front door and a place just back of this door were bent; the radiator grill was bent and the radiator tipped to one side but was not leaking; the bar that divides the window in the door on the right side was bent on account of the door being hit; the only new parts required in repairing the car were a headlight and a door handle; the car was not damaged at any place excepting at the right side of the front end and at and just behind the right door as has been stated; no glass was broken excepting that in the right front headlight. Plaintiff also adduced from his witnesses the fact that there were black tire marks 4 or 5 inches in width having the appearance of brake marks or skid marks that extended east from the point of the collision. One of these witnesses testified that measurements of these marks were taken by him and others, and that the marks extended for a distance of 354 feet east from the point where the cow was struck. All these matters plaintiff fully developed in either his own testimony or upon his quite extended direct examination of the witnesses he produced.

At this point the query obtrudes itself whether, in deciding upon the ruling on the motion, we should eliminate from any consideration on our part, as plaintiff says we should, certain unfavorable portions of the showing plaintiff himself made as a part of his case as set out in the foregoing paragraph. It seems to be plaintiff's thought that in viewing the evidence in a light that is favorable to him it becomes our duty to consign to oblivion the physical facts and some other matters that plaintiff not only conceded but affirmatively and intentionally established, and concerning which there is no contradiction by any witness. Then, according to plaintiff, we should determine the right of the controversy upon certain other testimony in the

record the salient features of which are the following: One of plaintiff's witnesses testified he saw the car hit the cow. Then, says this witness:

"The cow just spun around and around and around and went up the pavement as it threw her a ways. She flew pretty near up thirty feet without touching the pavement at all; and then she hit the pavement and bounced better than five feet; then she hit the pavement again and bounced again to where she laid."

It was like a rubber ball, the witness explained to the jury. The bounce of 5 feet or more was a bounce of 10 or more feet the witness related later in his testimony. He reiterated that preceding this bounce he had seen the cow "fly through the air thirty feet." His testimony was also to the effect that the cow's flying weight when she took off was 1,200 pounds. What car velocity and weight would have been required to develop the foot-pounds this witness allegedly saw expended would be a worthwhile if possible calculation. Plaintiff's own testimony was that he was almost sure that defendant at no time applied the brakes and that in his opinion the speed was about 70 or 75 miles per hour when the car struck the cow. At another place in his testimony he says it was 80 miles per hour. One of the tenants, as plaintiff's witness, stated "as near as I can say the car was coming down the hill seventy-five to eighty miles per hour and did not slow up so far as I could see." This was the witness to whom it appeared that the cow performed so amazingly like a rubber ball. The other tenant testified that there was an awful roar and that "it never slowed down until they struck the cattle." This was the witness who also testified concerning the measurement of the black tire marks that extended 354 feet. The rate of speed as estimated by plaintiff and his two witnesses, together with the manner in which, allegedly, the cow was catapulted, was sufficient and effective, in plaintiff's opinion, to generate jury questions respecting the specifications that (1) defendant failed to reduce his speed and (2) drove into the cattle at 70 to 80 miles per hour. But defendant urges, and it

appears to us, that this testimony of plaintiff and his witnesses is so wholly inconsistent with the undisputed and established physical facts, related in the preceding paragraph, that the inevitable conclusion is that plaintiff and his witnesses were mistaken. In connection with what defendant urges, plaintiff was undoubtedly entitled to have his evidence viewed in a light as favorable to his contention as is reasonably possible. But one should not be unmindful of the element of reasonableness that inheres in this rule, or of the fact that the scintilla of evidence doctrine does not obtain in this jurisdiction. The estimates of the rate of speed at the time of the collision as stated by plaintiff and his witnesses, together with the testimony concerning the exhibition of levitation credited to the cow by one witness, were in such conflict with incontestable facts that plaintiff established as verities, including plaintiff's showing that the brakes were being applied for 354 feet, that we are of the opinion that such testimony of said witnesses was so lacking in probative force or effect that a jury finding that the car's speed as it approached the cattle was not reduced would be unwarranted. In McGlade v. City of Waterloo, 178 Iowa 11, 13, 156 N. W. 680, 681, the question was whether there was enough testimony so that had a verdict been returned, the trial court would not have been justified in setting the same aside upon the record made. From the opinion:

"We have repudiated the scintilla doctrine, and announced the rule that a trial judge should sustain a motion to direct whenever, considering *all* of the testimony, it clearly appears to him that it would be his duty to set aside a verdict if found in favor of the party upon whom the burden of proof rests. [Citing cases.] [Italics supplied.]

"Of course, this rule must not be so applied as to deprive the jury of its function to ascertain the facts, upon a fair dispute in the testimony, and the doctrine now generally applied is that if, at the conclusion of plaintiff's testimony, there is enough to take the case to a jury, a defendant cannot, after introducing his evidence, claim that there is nothing for a jury to determine. [Citing authorities.] But there are some exceptions to this rule.

For example, if the testimony offered by the party having the burden, is in conflict with undisputed facts, and especially with physical facts which are a verity, or is such that, under all the circumstances, it cannot, in the nature of things, be true, or is such as that it is entirely and wholly inconsistent with any other theory than that the witnesses must have been mistaken, the trial court is justified in directing, and it is its duty to direct, a verdict for the other party. Artz v. Chicago, R. I. & P. R. Co., 34 Iowa 153; Payne v. Chicago, R. I. & P. R. Co., 39 Iowa 523; Bloomfield v. Burlington & W. R. Co., 74 Iowa 607 [38 N. W. 431].''

This authority is cited in First National Bank v. Edgar, 199 Iowa 1136, 1142, 199 N. W. 1011, 1014, where the rule is thus stated:

''Where the testimony offered by a party upon whom rests the burden of proof is in conflict with undisputed facts, it is the duty of the court to direct a verdict. Graham v. Chicago & N. W. R. Co., 143 Iowa 604 [119 N. W. 708, 122 N. W. 573]; McGlade v. City of Waterloo, 178 Iowa 11 [156 N. W. 680]; Strader v. Armstrong, 192 Iowa 1368 [186 N. W. 407]; Grohe v. Jackson, 195 Iowa 705 [192 N. W. 808].''

From the foregoing it ensues that there was no competent evidence to sustain the portion of plaintiff's specification of recklessness that consists of the allegation that defendant failed to reduce the speed of the car as he approached the cattle.

What remains of the specification is, in substance, that defendant continued to drive into the cattle at an excessive and reckless rate of speed. Relative thereto the evidence showed that the car did not stop before reaching the cattle but continued its course and stopped beyond the place where were the cattle. There was evidence that the rate of speed was 80 miles per hour until the brakes were applied about 354 feet east of the cattle. But, as already stated, it must be found from the verities in the record that the speed was being reduced as the car traversed the 354 feet despite the estimates of plaintiff and

his witnesses. Of such matters we may take judicial notice. Wright v. Chicago, R. I. & P. R. Co., 222 Iowa 583, 268 N. W. 915. That the speed was being reduced is consistent with another incontestable physical fact, i. e., the contact with the cow was not such as to carom the car off the edge of the shoulder nor upon any other course, and it is not claimed that either occupant of the car was thrown forward from the front seat where he was sitting. No glass was broken except in the headlight. If we turn now to the actual conduct of defendant, it must be said that in what he was doing, from and after reaching the point about 354 feet east from the cattle, appears nothing excepting efforts he was putting forth for safety's sake. So if there were reckless operation of the car it must be found in his conduct at some place before that point was reached. It must be found if at all in his failure to reduce the speed before reaching the point where he applied the brakes. In retrospect it may appear that more of safety would have been attained had defendant applied the brakes farther up the slope. And it may be that one exercising the good judgment of an ordinary person would have done so, even though there was the tenant on the pavement in charge of the cattle crossing the road. But our inquiry must go further. For a recovery of damages by plaintiff, a guest, the legislature has prohibited, the only exceptions being in event of damages caused as a result of the driver being under the influence of intoxicating liquor or because of the driver's reckless operation of the vehicle. Section 5026-b1, Code, 1935. The query is whether a failure to earlier reduce the speed evidenced reckless operation. It is immaterial that negligence may perchance appear.

Brown v. Martin, 216 Iowa 1272, 1285, 248 N. W. 368, 373, was also a guest case, involving the same statute. The charges of recklessness were (1) that defendant was reckless in operating his automobile at a dangerous and excessive rate of speed as he drove off the pavement and onto the gravel portion of the highway and (2) in failing to have the car under control at and prior to the time its upset injured plaintiff. When defendant drove onto the gravel part of the road which was

rough and rutty, he lost control and the car rolled over twice after overturning. Plaintiff contended that, taking into consideration the two highway signs defendant had passed, one reading "Pavement Ends" and the other "Road under Construction," and the obvious condition of the gravel road, in connection with the speed at which defendant was driving, there was ample evidence to- indicate that defendant was guilty of recklessness. But we held at page 1285:

"In our opinion the presence of the road signs, the evidence as to the condition of the graveled road, and the evidence as to the speed at which the Martin car was traveling, are not sufficient to establish that the defendant, Martin, was guilty of recklessness. Moreover, the positive and undisputed evidence that the defendant did apply his brakes and slow down his car and that he tried to right it after it began to swerve, negative any such attitude on his part as would necessarily exist if he had acted recklessly, without any care, and with heedless disregard of consequences and the rights of others." This also appears in the opinion at page 1286: "Even if it may be said that the defendant should have reduced the speed of his car more than he did before going upon the graveled highway, there is nothing to show his failure to do so amounted to anything more than an error in judgment, and, regardless of the consequences, a mere error in judgment amounts to no more than negligence and is not recklessness."

The opinion quotes this from Neessen v. Armstrong, 213 Iowa 378, 239 N. W. 56:·

" 'The mind is prone to look upon the result, but, unless the acts of the defendant would have been reckless within the meaning of the law without the resulting injury to Neessen, they are not reckless merely because Neessen lost his life. Our statute, section 5026-d1, Code, 1931, was enacted for the very purpose of preventing recovery by a guest of damages resulting from the negligence of the driver of the automobile.' "

While in Brown v. Martin, supra, there was evidence that

the brakes were applied just before the car went off onto the graveled portion, in the instant case the brakes were applied 354 feet east of the place of danger, although it is true the car was descending a slope. In the two cases there is like showing of affirmative acts and efforts that at least tend to negative an attitude that would have existed had defendant been acting without any care and with heedless disregard of the consequences and the rights of others. Though it may appear in the picture depicted in plaintiff's specification of reckless operation, in the event itself, reconstructed from what must be accepted from the record, we are unable to discover that on which could be planted a finding that recklessness rather than poor judgment characterized the failure to apply the brakes at a greater distance from the cows. In White v. Center, 218 Iowa 1027, 254 N. W. 90, the evidence was that the defendant, driving 70 miles per hour without any slowing down and without pulling over to the unoccupied left side of the paving, crashed into the rear of a wagon that could have been seen for a quarter of a mile proceeding in the same direction as was defendant. Under such circumstances we held that a jury would be warranted in finding that defendant was not using any care and was acting with reckless indifference to the rights of others and was therefore guilty of recklessness. Such a showing is not approximated in the instant case. The court erred in not sustaining the motion for a directed verdict upon the ground that has been discussed. The judgment is reversed.—Reversed.

STIGER, MILLER, SAGER, and HALE, JJ., concur.

HAMILTON, C. J., dissents.