Freda S. McCarthy, Administratrix, et al., Appellees, v. Charles Mandery et al., Appellants.

No. 45326.

November 12, 1940.

Miller, Huebner & Miller and Will J. Hayek, for appellants.

Dutcher, Ries & Dutcher, for appellees.

MITCHELL, J.—The accident involved in this case occurred shortly after midnight, December 16, 1938, on U. S. highway No. 6 approximately one mile west of Wilton Junction, Iowa. Charles Mandery was driving his International truck and trailer in a northerly direction. The equipment weighed about 15,000 pounds and the trailer was loaded with frozen meat weighing about 18,000 pounds. John A. McCarthy was driving his 1935 Ford sedan in a southerly direction; riding with him was his wife and another lady. The McCarthy Ford passed the tractor and collided with the trailer. McCarthy was killed and his widow as administratrix commenced this action to recover damages. There was a trial to a jury which returned a verdict for the plaintiff, and the defendants have appealed.

It was the contention of the appellee and we quote from their brief:

"That the left front spring hanger of the rear wheel assembly was defective, that it had been broken, that it had been poorly welded, and that bolts were missing from the holes provided for fastening it to the frame. That being in a defective condition the left front hanger was the one which was likely to let go; that when it did break or let go, the forward motion of the truck naturally caused the rear wheel assembly to twist or turn making the then loose left spring hanger turn to the west causing the whole spring and assembly to face in a northwesterly direction. The clearance between the frame and the wheels of four inches would have allowed this. When turned in this direction naturally the wheels and rear end of the truck tended to pull in a northwesterly direction, away from the general direction of the truck. Then as the wheels reached the extreme turning limit, as limited by the frame between them, the motion of the heavily loaded truck caused the frame members to roll over

the wheels at the same time slowing them violently, this strain could cause the remaining fastenings to break and the wheels following the direction they started (northwest) would take the left front portion of the spring over across the center line so as to engage some part of the left front part of the McCarthy car."

It was the contention of the appellants and we quote from their brief:

"That no act on the part of Mandery caused the accident; that Mandery was operating his vehicle on his right-hand side of the paving; that the decedent was operating his Ford sedan in the center of the paving; that Mandery operated his truck toward and on to the east shoulder of the highway to avoid a collision with the oncoming Ford; that decedent operated the Ford past the truck and forward part of the trailer attached to the truck, but operated the Ford into and against the left rear wheel of the trailer, knocking the entire trailer axle assembly out from under the rear of the trailer."

There is evidence in the record that after the McCarthy car had passed the tractor that part of the trailer moved over into the left-hand side of the road, and ran into the McCarthy car. There is testimony in the record that contradicts the appellee's contention. Thus we find that there is a conflict as to just how the collision took place.

Appellants contend, however, that the physical facts are such, "that the only conclusion which could be reached by reasonable minds applying their intellectual processes to the facts in this case is that the rear wheel assembly remained under the trailer until forced out behind the trailer by the collision of the left forward portion of the Ford against the left rear dual tires of the trailer".

What are the physical facts relied on? First, appellants say that the Mandery tractor and trailer outfit was on the right side of the pavement. It is true that the tractor was on the right side but there is direct evidence that the rear part of the trailer moved over on the left-hand side of the road.

It is next argued that the rear wheel assembly was intact after the accident. It is not claimed that the assembly moved directly west, but the evidence shows that one of the frame

brackets had been welded, and that it broke at that place. That certain bolts were missing; that the left front portion of the spring being defective broke and thus left the left side of the trailer unsupported causing it to turn over on the left or west side of the road. It was not necessary for the rear of the trailer to move any great distance, the pavement was but 18 feet wide, the right side upon which the truck was traveling nine feet wide, while the exact measurement of the trailer body is not shown in the record, from pictures introduced, one can readily see that the body of the trailer must have been somewhere around seven feet wide. It was necessary to move only a foot or so to place it in front of the oncoming car. This it seems to us could have happened. Certainly we cannot say as a matter of law from this record that it did not happen.

Other physical facts relied on consist of burned rubber marks on the bed of the trailer; they could have been made by the trailer moving over on the left-hand side of the road. Here was a trailer loaded with 18,000 pounds of freight, and it is appellants' claim that the 1935 Ford sedan knocked the wheels out from under the rear of this trailer turning it over. It seems very unlikely that this could happen. The physical fact that convinces us, however, that probably this did not happen is the condition of the Ford car after the accident. One would think that this light car, hitting a trailer loaded with 18,000 pounds of frozen meat, would have been completely demolished, but instead the bumper was only loosened on one side; the front of the car was not damaged. The main damage was caused to the left side of the body of the Ford.

Appellants cite the case of Scott v. Hansen, 228 Iowa 37, 41, 289 N. W. 710, 712, in which this court speaking through Chief Justice Richards said:

" * * * it appears to us, that this testimony of plaintiff and his witnesses is so wholly inconsistent with the undisputed and established physical facts, related in the preceding paragraph, that the inevitable conclusion is that plaintiff and his witnesses were mistaken."

In the case at bar we have no such inconsistency as is referred to by the court in the above quotation. The physical

facts no more tend to show that it was impossible for the wheels and assembly to break loose, as appellee contends, than it was impossible for them to have been knocked loose as appellants claim. Clearly, it was a question for the jury.

 It is next contended that the court erred in giving instruction VIII½, which is as follows:

"You are instructed that it is the law of This State that every motor vehicle and all parts thereof shall be maintained in a safe condition at all times.

"In this connection, if you find from a preponderance of the evidence that defendant Charles Mandery failed to exercise ordinary and reasonable care in maintaining his truck and trailer and all parts thereof at the time and place of the collision, in a safe condition, and find that due to such lack, if any, of ordinary and reasonable care, any part or parts of the rear assembly of said truck trailer were in a defective and unsafe condition, and that as a result of such defective condition any part of the trailer or rear wheel assembly became loose and passed into the west lane of traffic, striking the car in which plaintiff's intestate was riding, then you would be warranted in finding that this constituted negligence as a matter of law on the part of defendant Charles Mandery, and if you further find that such negligence, if any, of the defendant, was the proximate cause of the injuries and damage, if any, to the plaintiff's intestate, and you further find that plaintiff's intestate was free from contributory negligence, then the defendants would be liable for such damages, if any, as were occasioned thereby."

Appellants' objections to the instructions are based upon two grounds. First, that the charge of negligence was not supported by the evidence, and, second, that the instructions applied the provisions of section 5105-a29, Code of 1935, to "Every motor vehicle" whereas appellants contend it should have limited the application to the kind of a vehicle Mandery was driving, to wit, a freight-carrying vehicle.

There was evidence that the trailer was heavily loaded, 18,000 pounds of frozen meat; that the spring hanger is a vital part of the load-bearing structure of the trailer; that there were missing bolts and a cracked spring hanger, which could have

been discovered by an inspection; that from the rusty appearance of the inside of some of the bolt holes, several important bolts were missing from the hanger and frame; that the spring hanger was fastened to the frame by several soft iron bolts instead of by steel rivets, which are generally used. All of these things could have been ascertained by a proper inspection, and there is evidence to sustain all of them.

The next question is whether the failure of the court to limit the instruction to the type of vehicle operated by appellants is prejudicial error.

In the first place an instruction which laid down the same requirements for all vehicles certainly cannot be said to be prejudicial to a party owning and operating the very type of vehicle the statute contemplated. The appellant nowhere argues or contends the statute, section 5105-a29, 1935 Code, did not apply to the kind of outfit he was operating. One to whom the statute applies cannot complain because the court told the jury that it applies to every motor vehicle, for the plain meaning of such an instruction is that the owner or operator of a freight vehicle has no greater duty so far as safe maintenance is concerned than does the owner or operator of ordinary passenger vehicles.

Secondly, it is of course impossible that the jury were misled in any way by the instruction. The whole case had to do only with the type of vehicle which is plainly within the terms of the statute. There was no question of fact involved as to whether the type of vehicle and the type of freight operation involved in the case was that to which the statute applied. The allegations of the pleadings, together with the undisputed evidence, showed without question that appellant's motor vehicle was, in the words of the statute defining the type of motor vehicle to which section 5105-a29 applies, an " * * * automobile truck, * * * not operated upon fixed rails or track, used for the public transportation of freight * * * for compensation, * * * over a regular route, * * * [not] owned by school corporations or * * * conveying children to and from schools." (Section 5105-a1, Code, 1935.)

Appellants finally contend that the court failed to submit its theory of the case. With this we cannot agree. The court

sets out a full and complete statement of the defense and from a reading of it, it is inconceivable to us that the jury was not fully advised as to appellants' theory.

Some other objections are made to the instructions. No requested instructions were asked. We are convinced the appellants had a fair trial, and that the case was submitted to the jury under proper instructions.—Affirmed.

HAMILTON, HALE, SAGER, OLIVER, BLISS, and STIGER, JJ., concur.

MILLER, J., takes no part.