John F. Thuente, Appellee, v. Hart Motors,
a partnership, Appellant.

No. 46413.

September 19, 1944.

H. E. Narey, of Spirit Lake, and Cornwall & Cornwall, of Spencer, for appellant.

Edward D. Kelly, of Emmetsburg, and Burington & Avery, of Spencer, for appellee.

Miller, J.—Plaintiff's petition sought damages in the sum of $2,449.65 for personal injuries received while riding on a truck owned by defendant, of which $449.65 was sought for hospital and medical care and supplies, $1,500 for pain, suffer-

ing, and mental anguish in the past, and $500 for pain, suffering, and mental anguish in the future; plaintiff also demanded the costs of the action. Count I of the petition predicated liability on the ground of negligence of the driver of defendant's truck. Count II predicated liability on the ground of recklessness of the driver of the truck. Defendant moved the court to require the plaintiff to elect on which cause of action he proposed to proceed. This motion was overruled without prejudice should defendant wish to raise the question during the trial.

At the close of plaintiff's evidence in chief defendant moved the court to withdraw from the consideration of the jury and to direct a verdict in favor of the defendant on Count I of the petition because the evidence showed that plaintiff was at most only a guest and as such defendant would not be liable to plaintiff for negligence. This motion was sustained and the trial proceeded on Count II of the petition. At the close of all of the evidence defendant moved for a directed verdict as to said Count II on the ground that the evidence failed to show recklessness. This motion was overruled. The jury returned a verdict in favor of plaintiff for $1,200. Judgment was entered thereon, from which defendant appealed to this court. Plaintiff also perfected a cross-appeal from the order which withdrew Count I of his petition from the consideration of the jury.

At the time that the record was settled it was stipulated that the only question to be raised by defendant on appeal was that the court erred in overruling its motion for directed verdict, which challenged the sufficiency of the evidence to show recklessness, and that the only question to be raised by plaintiff was that the court erred in refusing to submit his cause on the theory of negligence. We are of the opinion that there is merit in each appeal.

I. We will first consider the defendant's appeal. Plaintiff was a pharmacist, age forty-two, and on October 13, 1942, volunteered to assist in the local scrap drive sponsored by the Spencer Junior Chamber of Commerce. He and a number of other men were on a Ford truck, owned by defendant partnership and operated by one of the partners. They picked

up some old motors, steel girders, etc., which were delivered and unloaded. They then picked up a heavy tank, about four feet long and a foot and a half in diameter, weighing from eight hundred to one thousand pounds, and a quantity of wire. At a collecting station they unloaded the wire but not the tank. They then proceeded south on a paved highway out of Spencer past Leach Field, used as a park and athletic field, and made a right-hand turn off the pavement onto a graveled road to the west. As the truck made the turn, the rack or body of the truck tipped and became separated from the rear end of the chassis. The chassis and cab of the truck did not upset. Plaintiff jumped or was thrown from the truck and was injured.

Plaintiff testified:

"I was looking around and more or less talking. Everybody was talking to each other. There was nothing unusual that I recall."

Asked as to the speed of the truck, he answered:

"I don't really know well enough because I wasn't paying enough attention. I can't say how fast we were going."

One witness for plaintiff testified that the truck approached the corner at a speed of from thirty to thirty-five miles an hour and did not slow down appreciably before it reached the corner. Another testified that the truck was traveling twenty-five to thirty miles an hour and slowed down one or two miles as it approached the corner. Another placed the speed at thirty to thirty-five miles an hour and that it slowed down about five miles an hour for the turn. Another of plaintiff's witnesses placed the speed of the truck at about twenty miles an hour when it made the turn and that there had been quite a decrease in its speed. Another testified that the speed was twenty-five to thirty miles an hour and that the driver took his foot from the accelerator as he approached the corner but did not apply his brakes, reducing the speed to from twenty to twenty-seven miles per hour; after the rack started to tip the truck was stopped suddenly. Another witness testi-

fied that the speed of the truck was thirty-five miles an hour and that it "kind of skidded around the corner." Another witness placed the speed of the truck at thirty-five miles an hour.

The truck had been purchased by defendant about seven days before the accident. The rack was bolted on with two U-bolts, one in front and one in the rear. After the accident the front bolt still held. The rear bolt was missing and was not found at the scene of the accident.

The testimony offered by defendant created a sharp conflict in the evidence as to the speed of the truck, some of it placing the speed of the truck as it made the turn at fifteen miles per hour or less. But it was for the jury to decide as to the credibility of the witnesses. · We must view the evidence in the light most favorable to the plaintiff.

The specifications of recklessness asserted in the petition were as follows:

"a. Driving the truck at a speed greater than was reasonable and proper having due regard for the fact that he was turning off a paved highway on to a graveled highway and also having regard for the fact that the box or rack contained a cylinder as above set out weighing 1,000 pounds or more and that some of the occupants of the box or rack were sitting upon the top rail thereof.

"b. Driving said truck at a speed of thirty-five miles per hour under the conditions as herein set forth while making the turn as herein set out.

"c. In failing to keep said vehicle under control and reduce the speed to a reasonable and proper rate while making a sharp turn as herein set out."

Some doubt arises whether the foregoing allegations state a case of recklessness. But, in any event, the evidence introduced in support of them created nothing more than a jury question on an issue of negligence. We have often held that recklessness is something more than negligence and that proof of negligence alone will not permit a recovery under section 5037.10, Code, 1939, formerly section 5026-b1, Codes, 1935, 1931, 1927. The following cases are illustrative: Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46; Neessen v. Armstrong, 213

Iowa 378, 239 N. W. 56; Wilde v. Griffel, 214 Iowa 1177, 243 N. W. 159; Levinson v. Hagerman, 214 Iowa 1296, 244 N. W. 307; Welch v. Minkel, 215 Iowa 848, 246 N. W. 775; Koch v. Roehrig, 215 Iowa 43, 244 N. W. 677; Phillips v. Briggs, 215 Iowa 461, 245 N. W. 720; Shenkle v. Mains, 216 Iowa 1324, 247 N. W. 635; Petersen v. Detwiller, 218 Iowa 418, 255 N. W. 529; Stanbery v. Johnson, 218 Iowa 160, 254 N. W. 303; Paulson v. Hanson, 226 Iowa 858, 285 N. W. 189; Scott v. Hansen, 228 Iowa 37, 289 N. W. 710; Roberts v. Koons, 230 Iowa 92, 296 N. W. 811; Peter v. Thomas, 231 Iowa 985, 2 N. W. 2d 643; Harvey v. Clark, 232 Iowa 729, 6 N. W. 2d 144, 143 A. L. R. 1141; Tomasek v. Lynch, 233 Iowa 662, 10 N. W. 2d 3.

The rules announced and applied in the foregoing decisions of this court are well known to the bench and bar. It is not necessary to here elaborate upon them. Application of them to the facts of record herein, when taken in the light most favorable to the plaintiff, demonstrates that the defendant's motion for a directed verdict on Count II of the petition should have been sustained. The court erred in overruling it. The defendant's assignment of error in this court is well taken and must be sustained.

II. Plaintiff's assignment of error is submitted to us as an alternative proposition. Plaintiff seeks to sustain the ruling of the trial court on the motion for directed verdict as to Count II and asserts that, if such ruling is to be reversed, then the trial court erred in withdrawing from the consideration of the jury Count I of plaintiff's petition which predicated liability on the ground of negligence in the operation of defendant's truck. As we have sustained defendant's assignment of error as to the disposition of Count II of the petition, it now becomes our duty to consider the cross-appeal of plaintiff.

The high lights of the evidence have been reviewed by us in Division I of this opinion, supra. Further elaboration at this point would not seem necessary. We are satisfied that the evidence, when viewed in the light most favorable to the plaintiff, presented a disputed question of fact sufficient to require submission to the jury of the issue whether defendant's truck

was operated at a reasonable rate of speed and with due care
for the safety of those riding thereon when attempt was made
to negotiate the turn to the right at the time when plaintiff
received his injuries. Defendant asserts that plaintiff knew
all of the circumstances under which he was riding on the truck,
made no objection thereto, and assumed the risk of injury there-
from. But, were the jury to find defendant guilty of negli-
gence, the evidence would warrant a further finding that the
negligence which was the proximate cause of plaintiff's in-
jury was of an unexpected nature and of such short duration
that plaintiff could not be deemed to have acquiesced therein
for such a length of time as to be said to be guilty of con-
tributory negligence as a matter of law. See Miller v. Mathis,
233 Iowa 221, 8 N. W. 2d 744. If liability is to be predicated
herein on negligence, defendant's negligence and plaintiff's
freedom from contributory negligence were issues that should
have been submitted to the jury.

The trial court, having considered the evidence sufficient
to present a jury question on the issue of recklessness, ob-
viously considered that there was sufficient evidence to war-
rant a finding of negligence on defendant's part. The court
withdrew Count I of the petition from the consideration of the
jury on the theory that the evidence showed, as a matter of
law, that plaintiff was "riding in said motor vehicle as a guest
or by invitation and not for hire," within the contemplation
of section 5037.10 of the Code, so that he could only recover
by showing that he was injured because of the reckless opera-
tion of defendant's truck. The court erred in so holding.

The trial court based its ruling on the case of Park v. Na-
tional Casualty Co., 222 Iowa 861, 270 N. W. 23. That case is
not in point. In that case the plaintiff, Park, was injured while
riding in an automobile owned by one Craig. Park recovered
judgment against Craig in an action predicated on negligence
in the operation of the vehicle and then sued the National
Casualty Company as Craig's insurance carrier. The com-
pany defended on the ground that, since Park and Craig were
members of an orchestra and were proceeding to fill a business
engagement as such and Craig was being reimbursed for the
use of the automobile on such enterprise, the vehicle was being

used for the purpose of carrying passengers for a consideration, which rendered the insurance protection unavailable under an exclusion clause in the policy. This court held that the exclusion clause of the policy was not controlling. The case did not involve any interpretation of section 5037.10 of the Code, 1939 (then section 5026-b1, Code, 1935). The case is not in point here because there is no contention that defendant was carrying any passengers for hire. The question here is whether plaintiff is a "guest" within the contemplation of section 5037.10.

The trial court also relied upon the case of Brown v. Branch, 175 Va. 382, 9 S. E. 2d 285. In that case the defendant was the superintendent of a Sunday School and offered the use of his truck free of charge to conduct members and their guests to and from a Sunday School picnic. On the return trip after the picnic, the truck ran off the road into the ditch and plaintiff, who was then riding thereon, was injured. The issue, under the Virginia statute, was whether plaintiff was a "pay passenger" or a gratuitous guest. The court held that defendant was to receive no remuneration for the use of his truck and that the plaintiff was a gratuitous guest. We do not think that the decision is in point here because we feel that there is an important difference between a purely social enterprise, such as a Sunday School picnic, and a patriotic and community enterprise, such as the local scrap drive involved herein.

The general principles usually applied in defining a guest under the various guest statutes are thus stated in 4 Blashfield, Cyclopedia of Automobile Law and Practice, section 2292, to wit:

"In determining who are 'guests' within the meaning of automobile guest statutes, the enactments should not be extended beyond the correction of the evils which induced their enactment.

"One important element in determining whether a person is a guest within the meaning and limitations of such statutes is the identity of the person or persons advantaged by the carriage. If, in its direct operation, it confers a benefit only on the person to whom the ride is given, and no benefits,

other than such as are incidental to hospitality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes; but, if his carriage tends to the promotion of mutual interests of both himself and the driver and operates for their common benefit or if it is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactments. Of course, a passenger for hire is not within their operation, regardless of whether the passenger or some one else pays or promises to pay for the transportation.

''The fact that it is contemplated that some indirect benefit will accrue to the operator of the automobile, to which the carriage will have in some degree contributed collaterally or by way of inducement, is not sufficient to make the carriage one for mutual benefit within the rule as stated.''

In the Pocket Supplement, 1944, the foregoing statement is amplified thus:

''In other words, the term 'guest,' as it is ordinarily used in automobile guest statutes, imports that the occupant referred to is the recipient of the owner's or driver's hospitality. And a person enjoying this hospitality, and riding in an automobile either for his own pleasure or on his own business, without making any return therefor or conferring any benefit on the driver other than the mere pleasure of his company, is a 'guest.' On the other hand, a person who renders value received, or gives such recompense as to make it worth the driver's while to give the ride, is a 'passenger.' * * *

''Otherwise stated, the benefit accruing to or conferred upon the operator of the vehicle, sufficient to take the person riding with him out of the guest class, must be a tangible one growing out of a definite relationship. It is not necessary, however, that it be a consideration agreed upon for the transportation, and it may be in the form of anticipated profit as well as a direct return.''

In line with the foregoing statements, in the case of Forsling v. Mickelson, 66 S. D. 366, 283 N. W. 169, it was held that where a musician, who had volunteered his services for a booster

trip to advertise a community enterprise called the "Corn Carnival," was being transported in an automobile donated for the purpose by a public-spirited businessman, the musician was not a "guest" of the businessman under the guest statute. In Boysen v. Porter, 10 Cal. App. 2d 431, 52 P. 2d 582, an employee of a committee organized to elect a candidate for mayor of Los Angeles was riding in a truck, which had been donated with a driver for the service of the committee, when injured, and was held not to be a "guest" of the owner of the truck. In Arkansas Valley Co-op. Rural Elec. Co. v. Elkins, 200 Ark. 883, 141 S. W. 2d 538, an employee of a rural electric company asked a farmer to ride in a company car to determine where light poles should be placed on the farm and it was held that the farmer was not a "guest" of the electric company. In Delk v. Young, Ohio App., 35 N. E. 2d 969, a supporter of a candidate for sheriff accompanied him to a public meeting and it was held that the supporter was not a "guest" of the candidate.

While we do not find any analogous cases among the decisions of this court, it is apparent that the general principles applied in the foregoing decisions have been recognized and applied by this court. In Bookhart v. Greenlease-Lied Motor Co., 215 Iowa 8, 244 N. W. 721, 82 A. L. R. 1359, a prospective buyer of an automobile, who on invitation from a salesman entered the car to observe its performance, was held not to be a guest. In Thompson v. Farrand, 217 Iowa 160, 165, 251 N. W. 44, a lawyer's client who went with him on a trip to Ottumwa, stopping off at Pella to attend to some business, was held not to be a guest. In Knutson v. Lurie, 217 Iowa 192, 251 N. W. 147, we held that it was a disputed question of fact for the jury to determine whether a domestic servant was riding in her employer's car as a guest or as a servant. In Porter v. Decker, 222 Iowa 1109, 1111, 270 N. W. 897, we held that it was a jury question whether a young man who accompanied a truck driver on a trip to Omaha was to perform acts of assistance in loading and unloading the truck so as to obviate the guest statute. In Wittrock v. Newcom, 224 Iowa 925, 930, 277 N. W. 286, we held that a young lady's presence in an automobile demonstrator with the salesman and a prospect

was sufficiently identified with the attempt to sell the car so that she was not a guest. In Doherty v. Edwards, 227 Iowa 1264, 1269, 290 N. W. 672, we held that, where a representative of the FRA took a borrower in his car to arrange for some money for feed, the borrower was not a guest. In Mitchell v. Heaton, 231 Iowa 269, 276, 1 N. W. 2d 284, 138 A. L. R. 832, we held that a friend of a prospective purchaser, who accompanied the two negotiating parties, was in the car for the benefit of both parties to the negotiations and was not a guest.

By reason of the foregoing, we hold that the trip which plaintiff made in defendant's truck was not a social or gratuitous trip such as contemplated by the guest statute. Plaintiff and defendant were engaged in a patriotic, community project to aid the war effort. Defendant furnished a truck and a driver. Plaintiff was one of those who furnished physical labor required to load and unload the truck. The purpose of each was to aid the defense of his country. The trip was advantageous to each in the accomplishment of their mutual enterprise. The guest statute does not apply. The court erred in holding that it does. Plaintiff's assignment of error in this court is well taken and must be sustained.

Accordingly the cause is—Reversed and remanded on both appeals.

SMITH, MULRONEY, OLIVER, BLISS, GARFIELD, HALE, and WENNERSTRUM, JJ., concur.

MANTZ, C. J., dissents.

MANTZ, C. J. (dissenting)—Being unable to agree with that part of the majority opinion holding that the lower court erred in sustaining a motion to direct a verdict in favor of defendants on Count I of the petition (being the negligence count), I therefore respectfully dissent to that portion of the opinion and concur in the other parts thereof.

I. Count I of the petition was based upon negligence; Count II, upon recklessness; both resulting in damages claimed. The majority opinion holds that the lower court erred in submitting to the jury the claim based upon recklessness and also

**1304**

erred in not submitting the claim based upon negligence. In other words, the majority opinion holds that the lower court erred in both ways.

As set forth in the majority opinion, plaintiff was injured while riding in a truck then engaged in picking up scrap iron to be used for war purposes. There were eight or ten men in the truck, all volunteers, engaged in the same patriotic purpose. The truck belonged to Hart Motors. Frank Hart was the driver at the time of the accident. His services, along with the use of the truck, were donated.

While rounding a turn to the right from paved highway No. 71 to a graveled road, the rear end of the truck box turned on its side, plaintiff jumped, and was injured.

When plaintiff rested, defendant moved for a directed verdict on Count I and stated as grounds, "for the reason that there is no competent evidence or proof on which to submit to the jury any of the allegations of the petition." Also, "The record in fact fails to show any competent evidence or proof of negligence on any issue presented under the allegations of Count I which could possibly be submitted to the jury."

The motion was sustained by the court upon the theory that plaintiff when injured was a guest and therefore there could be no liability for negligence. This ruling was somewhat peculiar in that at the same time the court was permitting the jury to pass upon the claim in Count II that plaintiff was a guest.

While the court did not direct a verdict on the grounds set forth by defendant as to Count I, yet, if the record showed that the motion should have been sustained, it is immaterial what grounds the court gave for its ruling. If there was no case made under the record, the court should have granted the motion.

In ruling on the motion of the defendant to direct a verdict on Count I, the court would be bound to follow what is termed the most-favorable-evidence rule. To this rule, however, there are certain well-defined exceptions. McGlade v. City of Waterloo, 178 Iowa 11, 156 N. W. 680; Scott v. Hansen, 228 Iowa 37, 289 N. W. 710; Ward v. Zerzanek, 227 Iowa 918, 289 N. W. 443; McDaniel v. Stitsworth, 224 Iowa 289, 275 N. W. 572; Donahoe v. Denman, 223 Iowa 1273, 275 N. W. 154; Bower-

master v. Universal Producing Co., 221 Iowa 831, 266 N. W. 503; Bauer v. Reavell, 219 Iowa 1212, 260 N. W. 39.

The case of McGlade v. City of Waterloo, supra, 178 Iowa 11, 13, 156 N. W. 680, 681, is a leading authority on the matter of when it is the duty of the court to direct a verdict. The opinion was written by Deemer, J., and was handed down in 1916. We quote therefrom:

"The only question presented by this appeal is the sufficiency of the testimony to take the case to a jury. And the real point of inquiry is whether or not there was enough testimony so that, had a verdict been returned for plaintiff, the trial court would not have been justified in setting the same aside, upon the record made.

"We have repudiated the scintilla doctrine, and announced the rule that a trial judge should sustain a motion to direct whenever, considering all of the testimony, it clearly appears to him that it would be his duty to set aside a verdict if found in favor of the party upon whom the burden of proof rests. Meyer & Bros. v. Houck, 85 Iowa 319; Hurd & Wilkinson v. Neilson, 100 Iowa 555; Cherry v. Des Moines Leader, 114 Iowa 298, and cases cited.

"Of course, this rule must not be so applied as to deprive the jury of its function to ascertain the facts, upon a fair dispute in the testimony, and the doctrine now generally applied is that if, at the conclusion of plaintiff's testimony, there is enough to take the case to a jury, the defendant cannot, after introducing his evidence, claim that there is nothing for a jury to determine. Bever v. Spangler, 93 Iowa 576–608; Phillips v. Phillips, 93 Iowa 615; McLeod v. Chicago & N. W. R. Co., 104 Iowa 139; In re Betts' Estate, 113 Iowa 111; Gradert v. Chicago & N. W. R. Co., 109 Iowa 547. But there are some exceptions to this rule. For example, if the testimony offered by the party having the burden, is in conflict with undisputed facts, and especially with physical facts which are a verity, or is such that, under all the circumstances, it cannot, in the nature of things, be true, or is such as that it is entirely and wholly inconsistent with any other theory than that the witnesses must have been mistaken, the trial court is justified in directing, and it is its duty to direct, a verdict for the other party. Artz v. Chicago, R. I.

& P. R. Co., 34 Iowa 153; Payne v. Chicago, R. I. & P. R. Co., 39 Iowa 523; Bloomfield v. Burlington & W. R. Co., 74 Iowa 607.''

In the case of McDaniel v. Stitsworth, supra, 224 Iowa 289, 293, 275 N. W. 572, 574, in an appeal by plaintiff from an order directing a verdict against him, the court used the following language:

''It is true that on a motion for a directed verdict, plaintiff is entitled to have the evidence considered in its most favorable light to him. If, however, the testimony and physical facts show that a defendant is not guilty of any negligence which is the proximate cause of an injury, and that none of his acts contributed thereto, then it becomes the court's duty to sustain a motion for a directed verdict. McGlade v. Waterloo, 178 Iowa 11, 156 N. W. 680; First Sav. Bank v. Edgar, 199 Iowa 1136, 199 N. W. 1011; Van Gorden v. Fort Dodge, 216 Iowa 209, 245 N. W. 736; Hittle v. Jones, 217 Iowa 598, 250 N. W. 689; May v. Hall, 221 Iowa 609, 266 N. W. 297; Reid v. Brooke, 221 Iowa 808, 266 N. W. 477.

''In Hittle v. Jones, 217 Iowa 598, loc. cit. 602, 250 N. W. 689, 692, this court said:

'' 'When the evidence, physical facts, and surrounding circumstances warrant it, the district court may direct a verdict for the defendant * * *. Van Gorden v. Fort Dodge, 216 Iowa 209, 245 N. W. 736.' ''

It is elementary that in claims for damages for negligence the plaintiff must show: (1) negligence of defendant (2) that such negligence was the proximate cause of the injuries complained of, and (3) that the plaintiff was free from contributory negligence. All are affirmative matters. It is my opinion that plaintiff failed in the burden as to these three essentials, or some of them, to such an extent as to present a jury question.

First, as to his showing of negligence. Three grounds of negligence were pleaded:

(a) That he failed to drive the truck at a careful and prudent speed not greater than was reasonable and proper having due regard for the fact that he was turning off a paved highway onto a graveled highway, and also having regard for the

fact that the box or rack contained a cylinder as above set out weighing one thousand pounds or more, and that some of the occupants of the box or rack were sitting upon the top rail thereof.

(b) In driving said truck at a speed of thirty-five miles per hour while making the turn.

(c) In failing to keep said vehicle under control and reduce the speed to a reasonable and proper rate when making a sharp turn.

A consideration of these items calls for an analysis of the evidence. No witness gave testimony that the speed of the truck was dangerous, excessive, or unreasonable. No witness testified that there was lack of control. There were certain witnesses who placed the speed of the truck as it approached the turn at thirty-five miles per hour. Plaintiff's witness Sayre says he was 145 feet west and 225 feet north of the intersection and he gave the speed at twenty-five to thirty miles per hour. He testified that his estimate was based upon a test made about five months after the accident by watching a car driven at thirty-five miles per hour. The method used by him to determine the speed of the truck was rather novel. We quote from his testimony:

"I first determined or decided for myself that the truck was going twenty-five to thirty miles an hour when I began to think about it a couple of months ago when Mr. Burington asked me about it, and that was the first time I ever gave the matter of speed any thought. * * * Q. Now these figures of speed, George, aren't they based upon your recollection of what you saw that day? A. Yes, and from what I did the next day after you asked me. Q. What did you do the next day? A. I went out with Loren Moding in the car and he went along there and I stood out there and he went thirty-five miles an hour and from that I deducted how fast they were going."

It will be noted that as a witness he does not say where he stood—simply, "I stood out there." He fails to state that he stood in the same position he was standing on October 10, 1942. He testified about May 20, 1943, and he says that he made the test "a couple of months ago." Here we have a witness who

gives an estimate of speed based upon a so-called test made months afterward and we have no showing whatever that the conditions were similar. This witness thinks the truck slowed down some before attempting to make the turn.

Witness Watke was with Sayre and said the truck went thirty to thirty-five miles per hour but that it slowed up as it came to the corner; that the truck made the inside turn. Witnesses Sayre and Watke were part of a squad of football players under coach Luschinger, who was a witness for plaintiff. He saw the truck; nothing unusual in its movements; said that it was going from fifteen to twenty-five miles per hour, that at the corner there was quite a decrease in speed; that the truck made the turn at the corner in the natural way. Otto Bjornstad, Jr., for plaintiff, was on the truck. He said that before the turn its speed was twenty-five to thirty miles per hour; speed was reduced before the corner to twenty to twenty-seven miles per hour.

The other witnesses for plaintiff who testified as to the speed and operation of the truck were Isabelle Graff, Colletta Graff, and Mrs. Kindlespire. At the time of the accident these three witnesses were in the park north and east of the highway. This park is from eight to twelve feet lower than the pavement. The park was wooded, with many trees and shrubbery; there was a hedge between the road and the park; the road turned into was west of the pavement and was lower; it could not be seen from the park. Colletta Graff was in the park and over a block away; stated that she watched the truck going thirty to thirty-five miles per hour until it was one-half block from the accident; told of trees and shrubbery along the bank and a hedge there. She did not see the accident.

Isabelle Graff was in the park exercising a dog. She said the truck was going thirty to thirty-five miles per hour until it "upset." She does not drive a car; can judge speed; truck was going fast and "turned over." She said that she was from one to one and one-half blocks away; later she contradicted herself by saying she was one-half block away; that the park was sunk ten to twelve feet below the road. As to speed she said, "We would have to guess or estimate and that is more or less woman's intuition"; that this was her one experience in estimating the speed of a truck under the circumstances. She did not think the

speed dangerous but thought it too fast to make the turn. Said, "Maybe that is woman's intuition." Said she could not see the graveled road or pavement. Her testimony is contradictory, improbable, and is in direct variance with the physical facts.

Mrs. Kindlespire was in the southwest corner of the park with three little girls at the swing; park eight steps lower than the road and the swing behind shrubbery. The following is from her testimony:

"From the time I first saw the truck south of the bridge to when it started to make this turn its speed did not slacken up any. I have driven a car. I have never driven a truck. I have ridden in a truck very much with my husband, who works on a truck. In my judgment the speed of the truck from the time it left the bridge until the time it started to make the turn was thirty-five miles an hour. When the truck was coming down the road I didn't have any idea it was going to make the turn until it slammed on the brakes and slid around the corner. As the brakes were put on, the truck kind of skidded around the corner and the box flew off and the men flew with it."

Like the testimony of Isabelle Graff, that of Mrs. Kindlespire is abounding in contradictions, improbabilities, and is sharply at variance with the physical facts as shown by the record.

She says she had no idea the truck was going to make the turn until it "slammed on the brakes and slid around the corner." Also, the "truck kind of skidded around the corner and the box flew off and the men flew with it." Mrs. Graff said that at the turn the truck turned over, then the box went off, but could not remember the truck's going over.

In my judgment, neither of the two women who testified to seeing the accident was in a position to give credible testimony as to what happened at the time plaintiff was injured. The physical facts contradict them absolutely. The truck slowed down for the turn; all of the witnesses save Isabelle Graff and Mrs. Kindlespire so testified. The brakes were not slammed on, there was no skidding of the tires, the truck did not upset, the box did not fly off, the men did not fly through the air. Plaintiff says that he jumped. He was the only one injured.

It seems to me that in applying the physical-fact rule none of the three women witnesses was in a position to give credible testimony as to what took place. All of them were in a park much lower than the highway, with shrubbery, trees, and a hedge between them and the corner; they were not in a position to see the pavement or the graveled road turning away from them and to the west. See Petersen v. Detwiller, 218 Iowa 418, 255 N. W. 529. In the cited case the driver stated his speed was twenty-five miles per hour; plaintiff tendered a witness who claimed a greater speed of from thirty-five to forty miles per hour. This court held that this offered testimony in reference to the speed of the truck was not very convincing. In that case the claim was based upon recklessness. This court affirmed a directed verdict for defendant, saying that it was doubtful as to whether the record showed a plain case of negligence.

There was no evidence of lack of control; the evidence is exactly to the contrary. The driver was traveling at an ordinary rate of speed; he slowed up as he approached the turn; he made a natural and usual turn on the inside of the graveled road; as the rear of the box began to slip someone yelled or "hollered" to the driver to stop and he did so within a few feet, and he was out of the truck and on the ground before the rear end of the box went over; the truck did not upset and the wheels did not skid or slip.

It seems to me that under the record there exists a failure to show the essentials of negligence—that is, the want or lack of such care as the ordinarily or reasonably prudent and careful man would exercise under similar circumstances.

II. Not only does the record fail to show negligence on the part of the defendant driver but it fails to show that his claimed negligent acts were the proximate cause of the injuries suffered by the plaintiff. "Proximate cause" is that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces injury, and without which injury would not have occurred. Wine v. Jones, 183 Iowa 1166, 162 N. W. 196, 168 N. W. 318; Rauch v. Des Moines Elec. Co., 206 Iowa 309, 218 N. W. 340. In the Rauch case the court held that there must be a causal connection between the alleged "negligence" and the injury sustained and that the burden was upon the plaintiff to so

show. It seems to me that the acts claimed to be negligent were not so in fact, and further, that they were not the direct and proximate cause of the plaintiff's injuries. Hart Motors had secured the truck a few days before. It had a demountable combination box and stock rack. This box was fastened underneath to the chassis by large U-bolts. The purpose of these was to prevent the box from slipping from the frame. The man who fastened the box to the chassis testified that he used a wrench to tighten the U-bolts. After the accident it was found that the rear U-bolt was not in place; neither could it or any broken parts be found at or about the place of the accident, although search was made therefor. What had become of it was a matter of conjecture. With it unfastened and not in place the box was insecure and its weight was such that a large load with a tendency to shift and change position would likely get out of position, and this would be particularly true when the vehicle was rounding a curve. There was nothing in the record to indicate in the slightest degree that the driver or the other occupants of the truck had any intimation that the fastening was out of place or was broken or lost. This fastening was beneath the truck and could only be seen by getting underneath. The truck had been in use all day and nothing had happened to indicate that there was anything wrong with the fastening of the box to the chassis. The loss or breakage of the U-bolt could hardly have been foreseen. After the accident the front U-bolt was in place; only the rear one was gone, and its absence caused the back end of the box to slide and tip over. The front end did not tip or slide. It seems to me that it is too clear for argument that the loss of the U-bolt was the cause of the box tipping over. Its absence was the intervening cause. Had the break been caused by speed at the turn, the broken U-bolt would have been found. Likewise, the speed would have broken the front bolt. It seems to me that the causal connection between the alleged acts of negligence and the injuries of plaintiff was broken by the intervening cause, the loss of the U-bolt which fastened the body to the chassis. The box was long and heavy—a one thousand-pound compressor, together with at least eight men, was in it; thus the weight or load was liable to shift from time to time, especially on uneven

surfaces; the graveled road turned into was rough and bumpy at the turn and was lower.

1 Thompson on Negligence 153, section 156, states:

"* * * proximate cause is probable cause; and that the proximate consequence of a given act or omission, as distinguished from a remote consequence, is one which succeeds naturally in the ordinary course of things, and which therefore ought to have been anticipated by the wrong-doer * * *."

See Watson v. Dilts, 116 Iowa 249, 89 N. W. 1068, 57 L. R. A. 559, 93 Am. St. Rep. 239; Swaim v. Chicago, R. I. & P. Ry. Co., 187 Iowa 466, 471, 174 N. W. 384, 386 [certiorari denied 252 U. S. 577, 40 S. Ct. 344, 64 L. Ed. 725]. In the last-cited case, Weaver, J., speaking for the court, used the following language:

"It is true that if, under all the proved circumstances, the conclusion that the injury was the proximate result of defendant's negligence is no more reasonable or probable or likely *than that it was brought about by some other cause,* for which the defendant is not responsible, then, of course, the plaintiff has failed to establish a fact without which he cannot recover." (Italics supplied.)

Applying this quoted language to the facts in this case, let us see what the situation is.

Plaintiff claims as negligence a speed of thirty-five miles an hour in making the turn, lack of control, and failure to reduce speed to a reasonable and proper rate at the turn. I do not think that there is any credible testimony to establish such claims. The evidence without dispute shows that the box was securely fastened to the chassis a few days before; that after the accident the fastening could not be found. It is quite evident from the record that when the turn was being made the weight of the body and the load caused the unfastened end to slip and slide. Here was a condition which would not reasonably have been foreseen. The truck had been in use all day, making trips and gathering loads of scrap, and there is not a word in the record to indicate that anyone in or about the truck had any intimation, knowledge, or warning that the U-bolt fastening was not in place. The many loads hauled by this truck (being a record load of

thirteen thousand pounds) could have caused such a strain on the fastening as to have caused it to fall out or become broken.

The absence of the U-bolt at or near the place of the accident, either broken or otherwise, as shown by the record, demonstrates with greater certainty the real cause of the accident as against the claim of plaintiff that the overturned box was caused by negligent acts of the operator of the truck. Here we have shown an intervening cause unrelated to the claimed negligent acts which proximately caused the accident and the injury to plaintiff.

Plaintiff in pleading alleged freedom from contributory negligence. He had the burden of so showing. This court has in many cases defined such term. .One of the leading cases of this state on that question is Banning v. Chicago, R. I. & P. Ry. Co., 89 Iowa 74, 86, 56 N. W. 277, 279. There the court said:

"The rule is that, if the injured party contributed in any way, or in any degree directly to the injury, there can be no recovery."

The rule there laid down was cited in express language in the case of Towberman v. Des Moines City Ry. Co., 202 Iowa 1299, 211 N. W. 854.

In the case of Rogers v. Lagomarcino-Grupe Co., 215 Iowa 1270, 1273, 248 N. W. 1, 2, the court approved the following instruction defining contributory negligence:

" 'By contributory negligence is meant such negligence or want of reasonable care on the part of the party injured as was a co-operating cause and directly instrumental in causing or bringing about the damages in question upon her, and may consist in her voluntarily exposing herself to danger, or in failing to avoid danger when the danger was known to her, or, when by the exercise of reasonable care and prudence on her part she would have discovered the danger in time to have avoided it; and it follows from this that although the defendant may have been guilty of negligence at the time, yet, if the plaintiff through her own negligence contributed to her damage, plaintiff can not recover.' "

See, also, 102 A. L. R. 417, 420.

In the case of Hellberg v. Lund, 217 Iowa 1, 2, 250 N. W. 192, this court had before it the claim of the injured party that contributory negligence, if shown, must be the proximate cause of the injury to prevent recovery. In that case, Claussen, J., in setting forth the rule, said:

"In the case of Towberman v. Des Moines City Railway Co., 202 Iowa 1299, 211 N. W. 854, Mr. Chief Justice Albert reviewed the decisions of this court bearing on the relationship that must exist between negligence on the part of plaintiff and the injuries sustained by him to bar recovery. More recently the question has been examined by Mr. Justice Kindig in the case of Hogan v. Nesbit, 216 Iowa 75, 246 N. W. 270. This court is now firmly committed to the rule that such relationship must be causal. The rule as it now stands is elementary in simplicity, and we are not disposed to cast doubt on it by overnicety in distinctions. Negligence which causes or contributes to cause an injury bears causal relationship to such injury, and certainly negligence, but for which the injury would not have occurred, is causally related to the injury."

See Hamilton v. Boyd, 218 Iowa 885, 256 N. W. 290; Spooner v. Wisecup, 227 Iowa 768, 288 N. W. 894. However, contributory negligence to bar recovery need not be the proximate cause. Swan v. Dailey-Luce Auto Co., 221 Iowa 842, 265 N. W. 143, and cases there cited.

The truck was from twenty-two to twenty-three feet long and had on it a combination grain box and stock rack, the latter being on top of the other. The floor of the box was four feet from the ground; the top of the rack was five feet from the floor, making the rack nine feet from the ground. Plaintiff was astraddle the rack and sitting on top of it. He was a drug clerk and there is no evidence to indicate that he was used to or familiar with the operation of a truck. Sitting or standing in that position could hardly be called a place of safety. Sitting astraddle a board rack nine feet from the ground made it a place of hazard. True, others were on and about the truck, but that would not excuse him from the need to exercise care for his own safety. When the box began to slip he jumped and was injured. No others jumped and none

was injured. As a witness he said that he guessed that he should not have jumped. The cab in which the operator was riding was a part of the chassis. Its rear window was obscured by the stock rack; the operator had no way of knowing the positions of the men on the truck; he had no control over any of them; they joined the squad or left as they saw fit. The driver simply drove as directed from the scrap headquarters. Plaintiff must have known that to leave the security of the box floor and take an insecure and unsteady position on top of a stock rack five feet higher was a hazardous undertaking in the case of an accident. Had he remained on the floor he would not have been injured. It seems to me that his act in getting on top of the truck contributed in a material degree to his injury, and having done so he is precluded from recovery. Applying these uncontroverted facts to the rule of this court as set forth in the case of Banning v. Chicago, R. I. & P. Ry. Co., 89 Iowa 74, 81, 56 N. W. 277, 279, where the court said: "* * * if the injured party contributed in any way, or in any degree directly to the injury, there can be no recovery," it seems to me that the plaintiff cannot recover herein; his conduct contributed in a material degree and he cannot recover.

I would affirm.