ANNA DOHERTY, Administratrix, Appellee, v. RALPH EDWARDS, Appellant.

No. 45036.

MARCH 12, 1940.

Linnan & Lynch and Birdsall, McGrath & Archerd, for appellant.

Fisher & Fisher and Lovrien & Lovrien, for appellee.

OLIVER, J.—This case has previously been before this court upon a question not involved in this appeal. Doherty v. Edwards, 226 Iowa 249, 284 N. W. 159.

On January 29, 1937, decedent, E. J. Doherty, was fatally injured by the overturning of an automobile in which he was riding and which defendant, Ralph Edwards, was operating. His widow, as administratrix of his estate, instituted this action against Edwards alleging his death was due to the negligent operation of said car by defendant. Trial to a jury resulted in verdict and judgment for plaintiff and defendant has appealed.

Appellant, Edwards, was assistant supervisor of the Federal Resettlement Administration in Sioux and Lyon counties. This organization was making feed loans to distressed farmers. These loans were secured by chattel mortgages and drew interest at 5 per cent. Appellant supervised the loans, prepared the applications and loan papers, secured the borrowers' signatures and completed the loans upon approval by the Resettlement Administration and arrival of checks. He was paid a salary plus 4½ cents per mile for the mileage he drove his car.

In 1936 decedent had executed an application and mortgage for a $175 resettlement feed loan and appellant later advised him the loan had been approved. However, the check failed to arrive and decedent had no feed for his livestock. On January 22, 1937, he wrote appellant the following letter:

"Dear Sir: I am writing in regards to the feed loan I was to get about Xmas time. I have not heard from you since if you would write a letter to me stating I was sure to get it I might be able to borrow some money for feed if I was sure it was coming otherwise I must sell my stock at a sacrifice.

"Please let me here from you by Return Mail as to why it is delayed and if I'll sure get it, and about what time."

Responsive to this letter appellant, on January 29, drove to decedent's farm near the town of Rock Valley. Decedent's widow testified appellant was told they had no feed, their livestock was starving and they would have to dispose of it if they didn't get feed or money; that appellant said he had written about the loan and got no answer; that he said, "Come on to town and he would see we either got feed or money, either at the elevator or the bank"; that decedent said, "Well, could I go this afternoon," and appellant said, "No he was in a hurry

and had to get back," and further, "If you will come with me I will take you back, as I have to go to Doon, anyway."

Decedent's son testified he had started their car ready to take his father to Rock Valley but decedent said appellant had asked decedent to go with him—then appellant called to decedent to hurry—and was in a hurry and decedent said, "I guess I will have to go with him."

There was evidence on behalf of appellant that his official duties did not include negotiating loans from banks or securing feed for persons who had applied for resettlement loans, and that the trip was taken to see the banker at decedent's suggestion.

Decedent sat in the front seat of the car which defendant drove $\frac{1}{2}$ mile west to the graveled highway, then south 3 miles along this highway to Rock Valley. Within the town limits this highway is the main business street of the town. It was then covered with rough ice. At the north edge of the town was a 25-mile speed limit sign. Appellant drove the car past this sign and traveled about $1\frac{1}{2}$ blocks south at a speed, estimated by a witness, of 50 miles per hour. Then he lost control of the car, it skidded 150 feet and rolled over. Defendant was not seriously injured but decedent suffered spine injuries which caused paralysis of his body and limbs. He was taken to a doctor's office and died the following day.

I. It is contended by appellant that the court erred in overruling the ground of his motion for directed verdict which was based upon the theory that he could be held liable, if at all, solely for recklessness, as distinguished from negligence. Appellee's position is that the trip was made for the mutual benefit of both decedent and appellant, and that decedent was not merely a guest in said car at the time in question. Therefore, appellee contends defendant's negligence and the further question as to whether the evidence established that decedent was not a "guest" were questions for the jury.

Section 5026-b1 of the 1935 Code provides in part:

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused * * * because of the reckless operation by him of such motor vehicle."

■ Knutson v. Lurie, 217 Iowa 192, 198, 251 N. W. 147, 150, is a leading case interpreting this statute and the decision, written by Justice Kindig, has been cited and followed in many jurisdictions. That case holds the occupant of an automobile is neither a guest nor a mere invitee when he is riding therein for the mutual, definite and tangible benefit of the owner or operator on the one hand, and of the occupant on the other hand, and quotes with approval from Russell v. Parlee, 115 Conn. 687, 163 A. 404, in part as follows:

" 'The person transported is not a guest within the meaning of a statute if the transportation is for the mutual benefit of both parties, and in determining whether it was for their mutual benefit the relationship to the parties to which it is an incident may be considered * * *. The relationship must be definite and the benefit tangible, * * * but it is not required that the relationship be such that the benefit accruing is the consideration for the transportation agreed upon by the parties.' "

■ The rule enunciated by Knutson v. Lurie, supra, has remained unchallenged and has been repeatedly approved. Ordinarily where the only benefits conferred upon the person extending the invitation are those incidental to hospitality, companionship or society, the passenger is held to be a guest. Where the passenger is a social guest or casual invitee he is usually regarded as a guest even though he may contribute something toward the expenses of the journey and may be expected to operate the car on part of the trip. McCornack v. Pickerell, 225 Iowa 1076, 283 N. W. 899; Sullivan v. Harris, 224 Iowa 345, 276 N. W. 88; Vance v. Grohe, 223 Iowa 1109, 274 N. W. 902; Clendenning v. Simerman, 220 Iowa 739, 263 N. W. 248.

On the other hand in Wittrock v. Newcom, 224 Iowa 925, 277 N. W. 286, we held that a lady passenger in an automobile which was being demonstrated to a customer was not a guest where she was requested to ride because she was related to and employed by the prospective customer and the salesman thought her presence would further his chances of making a sale. This expectation on the part of the salesman was recognized as sufficient to constitute the definite and tangible benefit to him referred to in Knutson v. Lurie, supra. Therefore, it was held the

trip was for the mutual benefit of the parties and the lady passenger was not a guest.

In the case at bar the status of the Federal Resettlement Administration and its purpose in making feed loans have been the subject of considerable discussion. We do not regard this as important. Appellant was employed in a commercial enterprise. His employer was engaged in making loans, at interest, to such persons in a certain designated class as could furnish proper security. As supervisor of loans, appellant would have certain express and implied duties irrespective of the character, motives or ultimate purposes of his employer. These duties do not appear to have differed substantially from those ordinarily performed by persons employed by private corporations engaged in the loan business.

Appellant had charge of this loan and it appears to have been his business to service it and secure its consummation. There is evidence that when the remittance to cover the loan did not come forward appellant wrote to the home office in an effort to secure action; that after receipt of decedent's letter of January 22, appellant went to decedent's farm on January 29, said he had intended to get there sooner but was delayed and that appellant was told decedent's livestock was starving and must be sold unless feed or money for feed could be secured. This forced sale would have meant loss of the opportunity to consummate the loan because of no further need for it and also because of lack of security. There is evidence that appellant then suggested that decedent go with him to Rock Valley, where appellant would see decedent got either feed or money, at the elevator or the bank. Presumably the presence of both was necessary.

Apparently appellant had in mind a plan by which decedent could immediately secure feed pending arrival of the money he had borrowed. It is common knowledge that arrangements of this nature are frequntly made by parties awaiting the arrival of funds from loans. The relations between decedent and appellant were of a business and not a social nature. Obviously, preventing the failure of any loan was for the benefit of appellant's employer and employment. Mrs. Doherty testified that after the accident appellant went to the bank with her "to see if they would furnish me a little money on that loan. The money

was furnished and I bought feed with it. The loan was afterwards completed and I paid interest on it.''

From the evidence and circumstances the jury would have been warranted in finding this service was a part of appellant's duties. There is evidence to indicate appellant so regarded it and was allowed mileage for the trip. Under the record the jury could properly have found that the trip for the purpose of preventing the cancellation of the loan was for the definite and tangible benefit of both decedent and appellant. Therefore, the trial court did not err in submitting to the jury the question whether or not decedent was a guest in appellant's car at the time of the accident.

II. For the purpose of controlling traffic, section 5030, Code of 1935, divides cities and towns into districts or zones, and fixes a maximum speed for each district. It defines a residence district and limits the lawful speed therein to 25 miles per hour. Section 5030-b2 requires cities and towns to erect signs showing the points at which the rate of speed changes and the maximum rate in the district which the vehicle is entering. One of the specifications of negligence submitted to the jury was predicated upon the theory that the car was being driven in a residence district of Rock Valley at a speed in excess of 25 miles per hour. Appellant contends there was no proof that the accident happened in a residence district, and, therefore, that the court erred in refusing to withdraw this specification of negligence. The accident happened on the main street of the town about 4 or 5 blocks from the business district. There were a number of dwellings upon both sides of the street in the vicinity of the accident, but their exact locations were not shown. At the edge of the town about 500 feet north of the place of the accident the car had passed a sign alongside the highway which read, ''Slow down, speed limit 25 miles per hour.'' Witnesses upon both sides, including appellant himself, referred frequently to this speed limit sign. The town marshal who was also street commissioner testified about its position. Nor was there any suggestion that the sign was not properly located. In the absence of proof to the contrary it will be presumed the town officers properly performed the mandatory duty imposed upon them by said section 5030-b2, in the erection and maintenance of this sign. Arends v. De Bruyn, 217 Iowa 529, 252 N. W. 249.

Another witness testified without objection that the accident happened inside the 25-mile zone. Upon the entire record we conclude the showing was at least sufficient to require the court to submit to the jury the question of whether the accident happened in a residence (25-mile) district. Consequently, the error assigned is not well founded.

In connection with the foregoing assignment of error appellant also complains of the form and contents of various related instructions. We have carefully considered the criticized instructions and find no reversible error therein.

III. Immediately after the accident appellant got out of the car and went to a house across the road to call a doctor. Appellant accompanied Mr. Doherty to the doctor's office and remained there about an hour. During this time he exhibited considerable concern about Mr. Doherty's condition. The doctor examined appellant also. Then appellant went with Mrs. Doherty to the bank where, as above-noted, arrangements were made for a temporary loan. Upon appellant's return to the doctor's office witness Simmonsma testified he said to appellant, "These conditions look like you had been driving terribly fast." Appellant answered, "Well, I guess I must have." No objection was made to this testimony.

This witness also testified that when Mr. Doherty was first brought to the doctor's office decedent said in the presence and hearing of appellant, "Barney, he was driving terribly fast; I begged him to slow down," and that appellant said nothing in response to said statement.

Decedent's son arrived at the doctor's office a short time after his father had been taken there. He testified, "My father said to Mr. Edwards: 'Well I guess we were going too fast.' Then he said repeatedly, 'We were driving too fast.' He also said 'I told him to slow down and that they were traveling 60 miles an hour.' " Appellant talked to decedent but didn't reply to the statements.

The testimony of these two witnesses concerning statements made by decedent in the presence and hearing of appellant and the failure of appellant to reply thereto, was admitted over appropriate objections on the part of appellant. Error is assigned to these rulings.

■ Evidence of the failure of a person to reply to material statements made in his presence and hearing, concerning facts affecting his rights is competent, if the statements are of such character and are made under such conditions that a denial would have been natural had the statements been untrue or incorrect. Such conduct may warrant an inference of implied admission of the truth of the statements. Geddes v. McElroy, 171 Iowa 633, 154 N. W. 320; Owen v. Christensen, 106 Iowa 394, 76 N. W. 1003; Des Moines Savings Bank v. Colfax Hotel Co., 88 Iowa 4, 55 N. W. 67, 20 Am. Jur. Sec. 569, 76 A. L. R. 1391, note.

However, such evidence should be received with caution and is incompetent if the situation or conditions are not such that the natural and reasonable inference from such silence is an admission of the truth of the statements.

In the case at bar the statements were made by the party injured in appellant's automobile. However, it is contended appellant's physical and mental condition resulting from the accident and his concern and solicitude for Mr. Doherty were such that a failure to deny would not have been unnatural. 20 Am. Jur., sections 567 and 594; McCord v. Seattle Electric Co., 46 Wash. 145, 89 P. 491, 13 L. R. A., N. S., 349.

The effects of the accident upon appellant do not appear to have been sufficient to remove the case from the general rule first above-stated. It was not disputed that shortly after the alleged statements were made appellant went to the bank with Mrs. Doherty and there assisted her in transacting some business. Nor do we think appellant's solicitude for Mr. Doherty furnished sufficient excuse to render the evidence inadmissible. It may be noted that the only excuse contained in appellant's testimony is that no such statements were made in his hearing. There was evidence of repeated statements made in his presence and that at least one such statement was directed to him. During this time he was conversing with Mr. Doherty. Under the circumstances we conclude the court did not commit error in permitting the jury to pass upon this evidence.

■ In his argument appellant now urges that the court erred in failing to give a cautionary instruction concerning this evidence. No such instruction was requested nor was the claimed

error raised in the trial court. Consequently, it may not be considered. Simmering v. Hutt, 226 Iowa 648, 284 N. W. 459.

The judgment is affirmed.—Affirmed.

HAMILTON, C. J., and SAGER, MILLER, HALE, and BLISS, JJ., concur.