DONALD ZWANZIGER, as administrator of estate of Janet Zwanziger, deceased, appellant, v. CHICAGO AND NORTHWESTERN RAILWAY COMPANY et al., appellees.

SHARON CROATT, by Nick J. Croatt, parent and next friend, appellant, v. CHICAGO AND NORTHWESTERN RAILWAY COMPANY et al., appellees.

No. 51962.

APRIL 5, 1966.

REHEARING DENIED JUNE 13, 1966.

Brown, Dresser, Kinsey & Jolas, of Mason City, and John R. Cronin, of Nashua, for appellants.

Mason, Schroeder & Allison, of Mason City, for appellees.

BECKER, J.—These consolidated actions grow out of a train-automobile collision. Plaintiffs dismissed as to defendant railroad. Plaintiff Donald Zwanziger, as administrator of the estate of Janet Zwanziger, and Sharon Croatt, by her next friend, each allege they were passengers and not guests, in the automobile being driven by defendant Jane Hamilton and owned by de-

fendant Robert Hamilton. At the close of plaintiffs' evidence defendants moved for directed verdict on the grounds plaintiffs failed to carry their burden of proof that Janet Zwanziger and Sharon Croatt were passengers other than guests at the time of the accident. The motion was sustained. Verdict was directed in favor of the defendants. From this action plaintiffs appeal.

The sole issue is whether a jury case was presented as to the status of plaintiffs as passengers not for hire. Hereinafter reference to plaintiff Donald Zwanziger as administrator will be made in the name of decedent Janet Zwanziger.

In the fall of 1960, defendant Jane Hamilton and plaintiffs Janet Zwanziger and Sharon Croatt were all students at Hamilton Business College at Mason City, Iowa. Defendant Robert Hamilton, Jane's father, was vice-president and faculty member of the college. Jane lived with her parents about 16 miles from Mason City. The other two girls lived at different rooming houses in Mason City while attending business college.

Due to the introduction of defendant Jane Hamilton's deposition by plaintiffs, there are substantial conflicts in the evidence despite the fact that defendants were never called upon to introduce their testimony. However, taking the evidence in the light most favorable to plaintiffs, as we must under rule 344(f)2, the following facts appear.

During the 1960 school year the three girls became acquainted as fellow students. Plaintiff Sharon Croatt and defendant Jane Hamilton bowled on the same team of their school league. Plaintiff Janet Zwanziger did not bowl but often accompanied Sharon to the bowling alley. Other than bowling; Sharon and Jane did not go around together. However, Sharon had once been invited to lunch at Jane's home with three other girls. Janet Zwanziger was only casually acquainted with defendant Jane Hamilton. Plaintiffs Sharon and Janet were close friends.

Since each case turns on its own facts, the evidence must be examined in some detail. Earlier in the week of Friday; February 17, 1961, Miss Hamilton had invited a friend, Janice Rosenberg, who was Sharon Croatt's roommate, to spend the weekend at the Hamilton home. Miss Rosenberg declined as she

was going to her own home that weekend. Miss Hamilton came to the home at which Miss Croatt was rooming during that Friday evening and asked her to go to a movie. As Miss Croatt had three other girls in for the evening, Miss Hamilton joined them. Later they discovered the weather had turned bad. It was sleeting and icy outside. The girls accompanied Jane as she drove out to the bowling alley to find her parents intending to ride home with them. They contacted Mr. and Mrs. Hamilton but it was decided that Jane would stay with Sharon that night. This arrangement was carried out.

Saturday morning Sharon Croatt arose and went to Mass. It was still snowing and blowing. When she returned to her room, Jane Hamilton told her that she, Miss Croatt, was going home with her for the weekend. Sharon said that this was the first invitation or suggestion that she should spend the weekend at the Hamilton home. She did not want to go because she had to study for tests and because of the bad weather. Miss Hamilton announced that Janet Zwanziger, with whom Sharon had planned to study, was going with them and that she had already called Janet about it.

We will not here detail the evidence of the conversations which finally resulted in the two girls accompanying Jane. Suffice to say that if believed the evidence supports the conclusion that the two girls were reluctant to accompany Jane, primarily due to the weather. They had several telephone conversations during which they continued in the decision to remain in Mason City, but finally decided to go after repeated requests by Jane, who stated that she was afraid; that the plaintiffs should go along to help her because she could not go alone in case something happened.

Plaintiffs' testimony indicates that the weather was very severe. The car was stuck in the snow when the girls first tried to move it. Jane parked in the middle of the street when they stopped by to pick up Janet. The trip itself was through what was described by plaintiff as a real blizzard. The windows kept frosting up. Sharon wiped them off constantly. They had to roll down the windows and put their heads out to see where they were. They stopped at least five or perhaps six times to wipe

snow off the car as the windshield wipers could not do the job. They were not sure they could get up the hills along the way. They were hoping they could keep going and not have to get out and walk. However, they made the 16 miles to the Hamilton farm after about two hours driving, and stayed there that night. Sunday they were to be brought back, but this did not work out. Monday morning Jane was driving them back to school when the collision with the train occurred.

Defendant Jane Hamilton's memory of the weather on the morning, produced by plaintiffs by discovery deposition, is completely different. It was Jane's memory that it was just a clear cold morning. The sun was shining. There was no snow until they had gone about four miles. She had no trouble driving. These and several other conflicts were for the jury.

William Lyons, the local federal aviation agency employee, whose weather observations are certified by the weather bureau, testified that their records at the Mason City Airport showed light freezing rain Friday night February 17, 1961; and showed light snow and freezing rain February 18 from midnight to 7:58 a.m. At that time snow reduced visibility to one-half mile. From 8 a.m. until noon visibility ranged from one eighth to one mile with snow, blowing snow and fog. The wind during that time was from north to northeast at 20 to 28 knots. Nine inches of snow fell on February 18 to 9:10 p.m. There were four inches on the ground at 6 a.m. These observations were limited to Mason City Airport located seven miles west of Mason City. Mr. Lyons further testified: "It's not likely that it could have been perfectly clear between nine and eleven, because the weather report doesn't indicate clear. As to whether it could have stopped snowing, snow was reported in the weather portion of the report on all the hours from six to twelve. According to the report it was snowing constantly at the airport."

Motion to direct was limited to the status of the passengers. Therefore, the details of the accident which occurred on the return trip to Mason City the following Monday morning will not be here considered. The status of the plaintiffs as guests or as passengers must be determined by their status at the time they started the trip Saturday morning.

I. Section 321.494, Code, 1962, provides:

"Guest statute. The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

The following rules have been followed in determining who is a guest.

"The general principles usually applied in defining a guest under the various guest statutes are thus stated in 4 Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., section 2292, to wit:

" 'In determining who are "guests" withing the meaning of automobile guest statutes, the enactments should not be extended beyond the correction of the evils which induced their enactment.

" 'They were designed to relieve the harshness of the common-law rule which requires the exercise of ordinary care even to a recipient of the driver's kindness and hospitality. In construing such statutes their terms are not always to be taken in their literal sense, and the court will consider not only the ordinarily accepted meaning of the words used, but also such interpretation as may have been applied to them under common-law or similar statutes. * * *

" 'One important element in determining whether a person is a guest within the meaning and limitations of such statutes is the identity of the person or persons advantaged by the carriage. If, in its direct operation, it confers a benefit only on the person to whom the ride is given, and no benefits, other than such as are incidental to hospitality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes; but, if his carriage tends to the promotion of mutual interests of both himself and the driver and operates for their common benefit or if it is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactments.' " Bodaken v. Logan, 254 Iowa 230, 232, 233, 117 N.W.2d 470, 472.

██ ██ Thus one who rides in an automobile for the definite

and tangible benefit of the owner or operator, or for the mutual, definite and tangible benefit of the owner or operator on the one hand and of the occupant on the other, is not a guest. It is important to ascertain, if possible, what it was that primarily motivated the undertaking. If the facts are in dispute concerning the purpose of the transportation or the conditions under which the carriage is made, a jury question is presented. Knutson v. Lurie, 217 Iowa 192, 251 N.W. 147; Nielsen v. Kohlstedt, 254 Iowa 470, 117 N.W.2d 900.

■ II.   How do the foregoing rules affect the case at bar? If the jury could fairly find that a substantial motivation for the presence of the plaintiffs in the car was the driver's need for passengers growing out of the extreme driving conditions under which the trip was being made, such finding would clearly indicate a definite and tangible benefit for owner or operator. Driver aid under severe and dangerous driving conditions has not been the subject of many reported cases. The Supreme Court of Oregon considered the case of a passenger who was asked by his brother-in-law to accompany him on a trip from Baker, Oregon, to Burns, Oregon, a distance of 167 miles, much of it through mountainous territory. The brother-in-law had to make the trip for Safeway Stores, his employer. The roads were icy and slippery. Plaintiff told defendant he did not want to go, "He couldn't go". Defendant said he might need some help, his wife did not want him to go alone. Defendant wanted plaintiff to go along and help drive. Plaintiff accompanied the driver although he was paid nothing. He drove about 40 miles while defendant slept and also helped load several ten-pound sacks of salt. The Oregon court rejected the 40-mile driving stint as trivial, quoting Sullivan v. Harris, 224 Iowa 345, 276 N.W. 88, and ignored the help with the salt. It held the issue was nevertheless submissible on the passenger status with the following observation:

"In the light of the above legal principles we cannot say as a matter of law that the plaintiff was a guest. It was a question for the jury. We do not think it was entirely unreasonable in view of all the facts and circumstances that Howard, although a competent and experienced driver, should have considered it advisable to secure the services of the plaintiff to help him drive.

It was at a time of the year in this mountainous section of the state that snowstorms were to be expected. The highway was in a dangerous condition. It may be that Howard saw fit to provide against possible trouble. If, peradventure, Howard had become stalled with his car in a snowdrift and had requested some person to aid him in driving, would it then be contended that the person so rendering the service was merely a guest? It may be, as appellants contend, that plaintiff went along merely as an accommodation, to keep his close friend and brother-in-law company. Or it may be, as respondent asserts that the motivating influence in his going was to render a substantial assistance in the event of need. It is a question upon which reasonable-minded persons might well differ. Under such state of the record it is not for this court to substitute its judgment for that of the jury." Albrecht v. Safeway Stores, Inc., 159 Ore. 331, 340, 80 P.2d 62, 66.

The foregoing observations are sound. Certainly the presence of a helper, in the event of need, could be found to be a definite and tangible benefit under the weather conditions shown here. This type of motivation should have a validity at least equal to the various share-the-ride situations or common enterprise situations which have been held to create jury questions in our reported cases discussed in Division III.

III. But the Oregon case had a clear business purpose for the driver. Does this make a difference? On several occasions we have quoted 60 C. J. S., Motor Vehicles, section 399(5), pages 1014, 1015, as follows:

"* * * The benefit derived must be material and tangible, and must flow from, and depend on, the transportation provided, although it is sufficient if the benefit comes not from the passenger himself but from a third person; the motive or provocation for the invitation must be more than the social one of reciprocal hospitality or pleasure, *and the transportation must be in furtherance of something in the nature of a business or commercial interest. * * *.*" (Emphasis added.) Nielson v. Kohlstedt, supra; Hessler v. Ford, 255 Iowa 1055, 1057, 125 N.W.2d 132, 98 A. L. R.2d 539.

A literal application of the emphasized portion of the fore-

going rule would make the plaintiffs guests in this case as a matter of law. There are no facts indicating a business or commercial interest on the part of any of the parties here involved. Certainly, the fact that the girls were fellow students, coupled with the fact that the driver's father was a vice-president of the school, would not reach such a result.

That portion of the rule requiring a business or commercial interest is not consistent with the principles adopted or the factual situations outlined in our prior pronouncements. In Ritter v. Dexter, 250 Iowa 830, 836, 95 N.W.2d 280, we quoted Taylor v. Goldstein, 329 Mass. 161, 165, 107 N.E.2d 14, 16, to the following effect:

" 'The rule deducible from these decisions is that a plaintiff acquires the status of an invitee if he is riding with the defendant for the purpose of conferring a benefit in the performance of something in which defendant has an interest provided the benefit is other than "those intangible advantages arising from mere social intercourse" [citation] ; *that the benefit need not be of a pecuniary nature; and that it need not arise from a contractual relationship.'* " (Emphasis added.)

It is difficult to reconcile the emphasized phrases with the "business or commercial" requirement. But more important, the "business or commercial" requirement is not tenable under the facts of several of our prior cases. Motivation, to the tangible benefit of the driver, was held to create a jury question in the following situations; Ritter v. Dexter, supra, Ritter, age 17, took a ride to a nearby town in the Dexter automobile at the request of his school friend, Dexter, Jr., also age 17, to help the latter look for stolen fender skirts; Winter v. Moore, 255 Iowa 1, 121 N.W.2d 82, plaintiff and defendant were on a journey to Omaha where it was their intention to consult together and to jointly purchase a wedding gift; Bodaken v. Logan, 254 Iowa 230, 117 N.W.2d 470, a trip to Sioux City was for the purpose of obtaining certain uniforms, plaintiff's presence being desired to advise on the type of uniform. The reasoning that would classify these motivations as commercial or business in nature would indeed be tortuous and tenuous. In those cases we held that the jury could find a definite tangible benefit. Such business or commer-

cial benefit was not necessary in those cases and is not necessary now.

If we hold otherwise, we must say that there can be no tangible benefit to an individual that is not monetary in nature. Even in this age of the material, we believe that there can be benefits to the individual that are not commercial or businesslike in character. Monetary gain to the driver, present in most cases, is not a *sine qua non* to tangible benefit.

█ If plaintiffs' evidence is accepted, this case could be a clear and specific example of such a nonmonetary tangible benefit. The benefit of added safety resultant from presence of additional persons in a motor vehicle on a trip which is unusually hazardous due to inclement weather and difficult driving conditions could certainly be found by the jury to be definite and tangible within the rule laid down in Knutson v. Lurie, supra.

While not determinative it is of some significance that in the Ritter, Winter and Bodaken cases all of the passengers were on the respective trips at the invitation and urging of the driver. In the instant case the jury could find that plaintiffs did not want to make the trip; that they did so only at the urging of the defendant; that defendant's desire to have someone along in the event of trouble was a substantial motivating cause of the plaintiffs' presence.

IV. In passing on motion for directed verdict, the court at trial noted that there was no evidence that defendant was under any compulsion to go home over the weekend other than the statement attributed to her that "she had to go home". The trial court indicated that this is a very common expression and there was no showing that she was under any compulsion to go home. The court then stated the object of the trip was wholly social when considered from the standpoint of all three girls. Here there was a serious conflict. Defendant had stated that she invited Sharon Croatt to her home on the preceding Monday, confirmed on Wednesday. Sharon states the invitation was first extended Saturday morning at a time when it was snowing hard. From defendant's testimony it is quite clear that the weather could not have been a motivating factor for the invitation. From plaintiff Sharon Croatt's testimony, the weather could be found

to be a substantial motivating factor. This conflict was for the jury.

It is this conflict that is most important in distinguishing the facts here from those in Sullivan v. Harris, 224 Iowa 345, 276 N.W. 88. Weather was not a factor in Sullivan. Here weather can be found by the jury to have been important indeed. Other distinctions might also be made but we take this to be determinative.

■ Motivation of the parties must be examined, not in connection with the purpose of the trip, but in connection with the purpose of the presence of the passengers or guests in the car at the time the trip was made. The purpose of the trip may be an important circumstance in determining the purpose of the presence of the passengers or guests, it is not necessarily determinative. In Ritter v. Dexter, supra, we quoted McUne v. Fuqua, 42 Wash.2d 65, 253 P.2d 632:

" 'This requirement does not mean that the *taking of the trip* must be motivated by the expectation of receiving the benefit. It need only be shown that the *furnishing of transportation to the passenger* was motivated by such expectation. Nor does it mean that the expectation of receiving the benefit must be the sole motivating factor in furnishing transportation to the passenger. It is sufficient, we believe, if such expectation is shown to be a substantial factor.' "

For the reasons stated herein the cause is reversed and remanded for a new trial.

GARFIELD, C. J., and THORNTON, STUART and RAWLINGS, JJ., concur.

Moore, Larson and Snell, JJ., dissent.

MASON, J., takes no part.

MOORE, J.—I dissent.

The purpose of our guest statute (Code section 321.494) is to protect automobile drivers and owners from claims made by persons who were riding in the motor vehicle as guests or by invitation and not for hire except as the statute provides. Niel-

sen v. Kohlstedt, 254 Iowa 470, 473, 474, 117 N.W.2d 900, 903, and citations.

Although our statute is in derogation of the common law it is to be liberally construed with a view to promote its objects and assist the parties in securing justice. Nielsen v. Kohlstedt, supra; Rainsbarger v. Shepherd, 254 Iowa 486, 492, 118 N.W.2d 41, 44, 1 A. L. R.3d 1074, and citations.

In Murray v. Lang, 252 Iowa 260, 266, 267, 106 N.W.2d 643, 647, we say of our guest statute: "Thus, in line with our rule of liberal construction of this statute for the protection of 'the owner or operator of a motor vehicle', we have in effect created a presumption, rebuttable, that an occupant riding in a car operated by another person is a guest within the meaning of section 321.494, and has the burden of proving otherwise in an action predicated upon negligence of the operator or owner."

In Livingston v. Schreckengost, 255 Iowa 1102, 1105, 125 N.W.2d 126, 127, 128, we quote the following from Doherty v. Edwards, 227 Iowa 1264, 1268, 290 N.W. 672, 674: "Ordinarily where the only benefits conferred upon the person extending the invitation are those incidental to hospitality, companionship or society, the passenger is held to be a guest. Where the passenger is a social guest or casual invitee he is usually regarded as a guest even though he may contribute something toward the expenses of the journey and may be expected to operate the car on part of the trip. McCornack v. Pickerell, 225 Iowa 1076, 283 N.W. 899; Sullivan v. Harris, 224 Iowa 345, 276 N.W. 88; Vance v. Grohe, 223 Iowa 1109, 274 N.W. 902; Clendenning v. Simerman, 220 Iowa 739, 263 N.W. 248."

The facts in Sullivan v. Harris, supra, 224 Iowa 345, 276 N.W. 88, are very similar to those in the case at bar. There defendant wanted to go to Minneapolis to look for work. Defendant asked plaintiff to go and agreed to pay her expenses with the understanding she was to drive defendant's automobile on part of the trip. They were to stay at the home of defendant's relative in Minneapolis. Plaintiff was injured on the trip. We reversed judgment on a verdict for plaintiff and held as a matter of law she was a guest.

In our recent case of Reeves v. Beekman, 256 Iowa 263, 127

N.W.2d 95, we point out that such benefits to the operator or owner as are incidental to hospitality, social relations, companionship or the like are not definite and tangible benefits as are contemplated by the statute. Defendant was depressed over the death of a friend in Pomeroy. She asked plaintiff and a lady friend to ride with her from Fort Dodge to Pomeroy to pay her respects. Defendant testified she asked them "to come along—just to have somebody to talk to would help bring things happier, I thought." We held as a matter of law plaintiff was a guest.

Albrecht v. Safeway Stores, Inc., 159 Ore. 331, 80 P.2d 62, on which the majority seems to rely is clearly distinguishable on the facts. There one Howard was a district manager for Safeway Stores and as such was required to visit and inspect stores in five counties in eastern Oregon and to haul merchandise from one store to another. He was paid four cents a mile to cover traveling expenses. Plaintiff was asked by Howard to help him and help drive part of the time and was injured while riding in Howard's automobile on the trip.

The Oregon court at page 341 of 159 Ore., at pages 66 and 67, 80 P.2d, states: "Under ordinary circumstances the status of a guest would not be changed merely by reason of the fact that such person, at the request of the operator of a motor vehicle, did part of the driving. Such benefit would be too trivial or inconsequential to change the relationship of the parties. Sullivan v. Harris, (Iowa), 276 N.W. 88. In the instant case it is believed, however—although the question is close—that the facts and circumstances viewed in the light most favorable to plaintiff, present a question of fact for the jury."

Here plaintiffs were guests when they went with defendant to the bowling lanes on Friday evening and as companions would be expected to help keep a lookout and assist defendant in the operation of her vehicle. That is the extent of defendant's request on Saturday morning. I believe their status remained unchanged during the Saturday morning drive to the farm and on the return trip the following Monday morning when the accident occurred. What plaintiffs did during the trip Saturday morning was too trivial to change the relationship of the parties. The purpose of the trip was social.

If we are to change the well established rule stated in Livingston v. Schreckengost, supra, and overrule our prior cases, particularly Sullivan v. Harris, supra, we should clearly so state.

I would affirm.

LARSON and SNELL, JJ., join in this dissent.