Omer N. SIEREN, Appellee,

v.

Boyd STOUTNER and Clifford Stoutner, Appellants.

No. 53080.

Supreme Court of Iowa.

Nov. 12, 1968.

Rehearing Denied Jan. 13, 1969.

Baldrige & Baldrige, Washington, for appellants.

Livingston, Day, Meeker & Bates, Washington, for appellee.

SNELL, Justice.

This case involves the question whether plaintiff was a guest under section 321.494 of the Iowa Code at the time of his injury. It was a one-car accident in which the plaintiff was a passenger and the defendant, Clifford Stoutner, was the driver. They were the only occupants of the car. Boyd Stoutner owned the car and was made a defendant as owner. The accident occurred on a gravel road covered with ice and snow. The car went into a ditch at a turn in the road. Both occupants were injured. For convenience we will refer to the driver as defendant.

Plaintiff's theory is that defendant driver initiated and planned the trip for the purpose of obtaining beer for himself and that he asked the plaintiff to go with him because the beer was in plaintiff's car and defendant needed plaintiff's assistance to get the beer.

It was defendants' theory that plaintiff initiated the trip for the purpose of finding plaintiff's car that had been loaned to a friend and not yet returned. There was neither claim nor evidence that defendant-driver was intoxicated or had consumed any beer. Special interrogatories were submitted and answered. They will be discussed infra.

The real dispute revolves around plaintiff's status in the car.

The problem is fraught with difficulty. As we will comment, infra, it was apparently troublesome to the trial court and jury.

Whether the result shows an enlightened interpretation of our guest statute law or what to the writer is a continuing erosion of its purpose, depends on the premise from which the predicament of an injured person is viewed.

■ Regardless of what our philosophy or conclusion in this field of thinking might be it is not for us to act as a trier of the facts. That is what juries are for. Rule 344(f)1, Rules of Civil Procedure.

■ Our review is limited to a determination of the sufficiency of the evidence to generate a jury question. The weight and credit to be given to the testimony of the witnesses was for the jury. ·

The jury found for plaintiff and fixed the amount of his recovery at $10,000, of which $3,000 was on plaintiff's claim for future medical, surgical and hospital expenses.

In ruling on the motions of plaintiff and defendants the trial court set aside the $3,000 allowance and ordered entry of judgment for $7,000.

Defendants appealed and plaintiff cross-appealed.

I. According to the answer of the jury to a special interrogatory defendant initiated the unfortunate trip to find the beer locked up in plaintiff's car so defendant could participate in its consumption.

The testimony relating to the conversation leading up to the trip was by plaintiff and defendant with some corroboration of defendant's version. Plaintiff's corroborating witnesses were indefinite, evasive and with poor memories. One suggested drinking as a cause of the memory lapse.

At the time of his injury plaintiff was an unmarried minor living with his parents on a farm near Keota. At the time of trial he was married and was no longer a minor. Defendant, Clifford Stoutner, was a minor at the time of the accident.

Plaintiff testified that on January 30, 1965 he arose at 5 a. m., did the farm chores, ate breakfast and drove 110 miles to Milan, Missouri to attend his brother's wedding. Before the wedding reception he drank two cans of beer. After the wedding dinner he "had one can, possible two." On the way home he had one can in Ottumwa. He arrived home about 5 or 5:30. He

did the chores, ate supper, watched Jackie Gleason for 15 minutes and then with his car picked up Leland Sieren and Mike Lillig to go to a dance. They drove "around Keota for a little bit." Through a friend they obtained 36 cans of beer. (The friend was apparently more interested in providing an ample supply of beer for the young men than he was in obeying the beer laws.)

Defendant "drank two, possibly 3, cans of beer." At about 9 o'clock they reached the dance. They locked the car leaving the beer in the car. Leland Sieren found a friend and does not appear again in the record. Mike Lillig found his girl and started dancing with her. Plaintiff watched the dancing but did not dance.

Later plaintiff and Mike went to the restroom.

We quote from plaintiff's testimony: ("Cliff" refers to defendant)

"Q. Did anybody come into the restroom while you were there? A. I couldn't say for sure, but I think Cliff did. I didn't talk to him myself, I mean when Mike was in there.

"Q. Do you recall that Cliff came into the restroom? A. Yes, I think he was in the entrance or around the entrance.

"Q. Do you remember of having any specific conversation with Cliff at that time? A. Not me, myself, no * * *

"Q. Do you recall having a further conversation with Mike? A. Yes.

"Q. What was that? A. Well, it was about a half hour before intermission, he came up and asked me if he could use my car. He wanted to go downtown to get some cigarettes and sandwiches, he said.

"Q. Did you later have a conversation with Clifford Stoutner? A. Yes.

"Q. Will you relate what happened? A. Well, it was right after intermission, the band just stopped playing and I was walking out and there was Cliff and he asked me if I had any beer.

"Q. And now where, if you recall, did this actually take place? A. Right outside the dance, right in the entrance.

"Q. This is in the lobby of the Armory? A. Yes * * *

"Q. Did you give him an answer? A. Yes I did.

"Q. What did you say? A. I said I do.

"Q. What did he say? A. He said, Well, where is your car, and I said, Mike's got or I said Mike's got it, Yes.

"Q. Did you indicate to him where the beer was? A. In my car.

"Q. What did he say? A. He said, 'Let's go find it'.

"Q. What did you say? A. I didn't have nothing else to do so I said 'okay' * * *

"Q. What happened next? A. Well, we was going out the door or out the front entrance and Mike Schreurs was there and Cliff asked him if he wanted to go along, and Mike said, 'Sure, I'll get my coat'.

"Q. And did Mike go back to get his coat? A. Yes.

"Q. What did you do? A. We went out to the car. We did not wait for Mike. I did not say anything to Cliff about it. We went off and pulled out of the parking lot and stopped at the stop sign by the Standard Station. I had not told Cliff anything about where Mike Lillig had gone. When we got to the stop sign, I do not recall anything that happened there. There was no conversation between the two of us. Cliff turned west on old Highway 92 and drove west approximately two miles to the first road north. I had never been on this road prior to the accident. I don't remember what took place when we reached the corner where the car turned. We just turned north.

"Q. Did you have any conversation about turning the car from that road? A. No, I didn't. Cliff's car was in good condition. After we turned the corner, the road

looked a little snow-packed. I don't remember anything else about the road. It was real cold. I don't remember anything else as we went north. The next I remember was Monday morning I was in the hospital at Iowa City. I don't remember any conversation that took place between Cliff and I on the graveled road as we were going north."

While going down a rather steep snow-packed hill the car went off the road into a ditch and plaintiff was injured.

From cross-examination this appears:

"Q. How long had Mike Lillig been gone away from the dance when you and Cliff left? A. I would say half an hour or 45 minutes.

"Q. You knew where Mike Lillig was going, didn't you? A. Yes.

"Q. Why did you go west out of town instead of downtown to find your car? A. I don't know. To get beer for Cliff, I suppose.

"Q. How would you get beer for Cliff if your car was downtown? A. I don't know, he turned that way. I didn't have nothing to say about it.

"Q. Weren't you concerned about the whereabouts of your car? A. No, I wasn't."

Relative to the purpose of the trip defendant Clifford Stoutner testified:

"I saw Omer Sieren that night in the hallway part, saw him a few times before I met him in the hallway but I didn't talk to him.

"Q. Did you have a conversation with him that night? A. Yes.

"Q. Will you describe where that conversation occurred and what was said and by whom? A. Well, it took place in that hallway or the entrance before you go into the dance hall and I was with my cousin Tom at the time and it was around intermission time. And Omer came up, he came from the dance floor toward Tom and myself and he asked me if I had seen Mike Lillig and I told him no and he said that he took my car keys and my car over an hour ago to go downtown to buy some cigarettes and he wondered why he hadn't come back yet and I said I hadn't seen him. So he asked, he said he took Linda Yaeger with him to get them and it wouldn't take this long before they get back and he wanted my keys back. So he asked me if I would take him out to find his car. He seemed upset, that maybe something had happened to the car, that it might be in the ditch or he didn't know where it was. I mean he knew that Mike had it and he gave the keys to Mike but he didn't understand they would be gone that long. That was my impression. He asked me if I would take him out to find the car and I told him I would. * * *

"Q. Was beer mentioned in any manner in the Armory that night? A. No."

Tom Stoutner, a second cousin of defendant, testified:

"I remember the night Clifford was involved in an accident. I was at the Armory at the time of his accident. * * *

"I heard a conversation between Omer and Clifford. It took place in the hallway of the Armory outside the dancehall. We were standing there during intermission and Omer came up and asked if we had seen Mike Lillig which we hadn't, and he wondered if Cliff would take him out and find his car because Mike had left an hour or so previously and he wanted his car and his keys back. * * * I didn't hear Omer make any mention of beer that night and I didn't hear Clifford make any mention of beer that night. I didn't hear Clifford ask Omer if he had any beer. * * *"

In rebuttal plaintiff testified that he did not ask Clifford Stoutner to help locate his car.

The other testimony related to the condition of the roads, the accident and the injuries resulting therefrom. We will con-

sider the question of damages in a subsequent division.

II. Appellant is handicapped on appeal by the jury's specific findings in answer to submitted special interrogatories.

The jury answered that plaintiff was not guilty of contributory negligence; that the trip was for a definite and tangible objective or purpose of defendant; that defendant was guilty of negligence that was the proximate cause of the accident and resulting injuries; and that the verdict was based on a finding of specific negligence as distinguished from res ipsa loquitur.

The jury also made a specific finding on the claim for future medical, surgical and hospital expenses.

In a carefully drawn set of instructions most of the various contentions of the litigants were stated. The court instructed thereon. Five special interrogatories were submitted in addition to the general verdict forms.

III. The question of negligence was submitted pursuant to plaintiff's petition in separately numbered divisions.

Division I was based on allegations of specific acts of negligence. Division II was based on the doctrine of res ipsa loquitur. The jury was permitted to view the premises. We mentioned, supra, that the jury had difficulties. It appears that the jury asked the court for help.

This appears in the record:

"LADIES AND GENTLEMEN OF THE JURY:

"The Court has received your communication, which is in the following language:

'We feel the accident was unavoidable, but feel the defendant is liable by "res ipsa loquitur".

'Is this interpretation correct?

'Foreman,

'Harry Sater'

"You are respectfully informed that it would be improper for the Court to make any response thereto or comment thereon.

"/s/R. G. Yoder

JUDGE"

The jurors apparently resolved their difficulty because they based the verdict on a finding of specific negligence.

IV. Defendants claim error because the court did not submit sudden emergency as requested.

■ We find nothing in the record to require submission of sudden emergency. The road was snowpacked and slippery. Defendant-driver said he could not control the car's direction while going downhill. He obviously lost control. That is not the kind of emergency contemplated by our law. Brown v. Guiter, 256 Iowa 671, 678, 128 N.W.2d 896.

For discussion of sudden emergency see Winter v. Moore, 255 Iowa 1, 121 N.W.2d 82 and annotation in 80 A.L.R.2d 5, 15, 16.

V. There is no issue before us relative to obtaining, furnishing to or use of beer by minors. The jury found that it was the search for beer that prompted the unfortunate trip. The case does not turn on the question of "benefit" from the accomplishment of such a purpose. What would constitute a benefit is not decisive. The desired attainment of an objective or purpose is the issue. The answer is not found by weighing the benefits by us.

■ VI. Under our statute a guest may not recover for injuries resulting from ordinary negligence. Section 321.494 provides:

"Guest statute. The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless dam-

age is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

■■ A passenger who claims the statute is not applicable has the burden to prove his status was other than a guest. The evidence must be viewed in the light most favorable to plaintiff. Ritter v. Dexter, 250 Iowa 830, 832, 95 N.W.2d 280.

In the case before us there is no claim of intoxication or recklessness. The problem is when is a passenger a guest. There have been many exceptions to the strict application of the guest statute.

Marean v. Petersen, 259 Iowa 557, 144 N.W.2d 906, involved a share-the-ride plan under which each of 3 young men furnished transportation every third day. On page 565 of 259 Iowa, on page 911 of 144 N.W.2d this appears:

"This court has also given recognition to the inference an occupant of a car operated by another is a guest, placing upon the one contending otherwise the burden of so proving. On the other hand, one who rides in an automobile 'for the definite and tangible benefit of the owner or operator' or 'for the mutual, definite and tangible benefit of the owner or operator on one hand and of himself on the other' is not a guest within the meaning of section 321.494, Code, 1962."

We held the evidence justified a finding the passengers were not guests within the meaning of the statute.

In Livingston v. Schreckengost, 255 Iowa 1102, 125 N.W.2d 126, a share-the-ride case, we said:

"A great majority of the cases from other jurisdictions which have passed upon this problem have held either that such an arrangement takes the passenger out of the guest statute as a matter of law, * * * or creates a factual issue for jury deter-

mination. * * *" (loc. cit. 1107, loc. cit. 129 of 125 N.W.2d)

In Bodaken v. Logan, 254 Iowa 230, 117 N.W.2d 470, defendant invited plaintiff to ride to Sioux City to help pick out uniforms. We held plaintiff's evidence was sufficient to establish that plaintiff was a passenger and not a guest. See cases analyzed therein.

Ritter v. Dexter, supra, involved a search for stolen fender skirts. Bilbro v. Bilbro, 256 Iowa 499, 128 N.W.2d 282, involved a trip to funeral. In each case we held there was a jury question as to the status of the passenger.

Winter v. Moore, supra, involved a trip to Omaha to jointly buy a wedding present for a mutual friend. There was mutuality of interest in the purpose of the trip. Each side argued for a directed verdict. We discussed many situations and authorities. We clearly stated plaintiff's burden and held the question of plaintiff's status as a guest or otherwise *was for the jury*. (255 Iowa loc. cit. 9, 121 N.W.2d 82) (Emphasis supplied.)

In Zwanziger v. Chicago and Northwestern Railway Co., et al., 259 Iowa 14, 20, 141 N.W.2d 568, we said: "If the facts are in dispute concerning the purpose of the transportation or the conditions under which the carriage is made, a jury question is presented."

In the case before us there was a definite dispute in the evidence as to the purpose of the trip.

The jury accepted plaintiff's version and specifically found that the purpose of the trip was for the "definite and tangible objective or purpose of the defendant, Clifford Stoutner."

■ VII. Most of the cases involving the status of a passenger use the phrase "definite and tangible benefit." To decide this case according to our idea of what is a "benefit" would be to proceed from a false premise. It is not for us to substi-

tute our judgment as to the benefit from attainment of purpose for that of the parties involved. We do not hold that there would have been any real benefit to defendant in finding the beer that was in plaintiff's car. We do hold that if the purpose of the trip was for attainment of defendant's objective he is not relieved from responsibility because his objective was poor or because of his violation of the law relating to beer. See section 124.20, Code of Iowa. The attainment of an objective may be a benefit but the terms are not always synonymous.

It is the purpose for the trip rather than the actual benefit that we have recognized as important.

In 60 C.J.S., Motor Vehicles, § 399(5), page 1013, this appears: " * * * or if it is primarily for the attainment of some objective or purpose of the owner or operator * * *, he is not a guest."

In Vipond v. Jergensen, Iowa, 148 N.W. 2d 598, 605, this statement was cited and quoted. There was a dissent in the case but not on that point.

The same statement from 4 Blashfield, Cyclopedia of Automobile Law and Practice, is quoted in Bodaken v. Logan, supra, 254 Iowa, loc. cit. 233, 117 N.W.2d 470.

In Hessler v. Ford, 255 Iowa 1055, 1057, 125 N.W.2d 132, 133, 98 A.L.R.2d 539, we used the same quotation as follows:

" 'The intention of the parties in entering on the undertaking is a prime consideration in resolving the question of benefits and the direction in which they flow, as well as their character and significance.' "

In Marean v. Petersen, supra, a share-the-ride situation, we analyzed the authorities and held that there was a factual situation for jury determination.

In Zwanziger v. Chicago and Northwestern Railway Company, supra, we said:

"Motivation of the parties must be examined, not in connection with the purpose of the trip, but in connection with the purpose of the presence of the passengers or guests in the car at the time the trip was made. The purpose of the trip may be an important circumstance in determining the purpose of the presence of the passengers or guests, it is not necessarily determinative." (259 Iowa loc. cit. 24, 141 N.W. 2d loc. cit. 574.)

In Re Estate of Ronfeldt, Iowa, 152 N.W.2d 837, after discussing the help rendered by plaintiff's decedent on the trip, we said:

"We conclude that there is substantial evidence from which a jury might reasonably draw an inference that defendant's motivation in furnishing plaintiff transportation was the expectation of a benefit to defendant. The jury could properly find that the attainment of some objective or purpose of the operator was a substantial factor for plaintiff's carriage. [Citations]" (loc. cit. 844)

In the case before us the trial court gave instruction #12 as follows:

"Our statutory law provides that 'the owner or operator of a motor vehicle shall not be liable for any damage to any passenger or person riding in said motor vehicle as a guest or by invitation.'

"When such statutory enactment is applied to this case, it means that if the trip in which the plaintiff and Clifford Stoutner were engaged, at the time and place in question, conferred a benefit only to the plaintiff, and no benefit, other than those incidental to hospitality, companionship or sociability upon Clifford Stoutner, then the plaintiff was a guest in the Stoutner vehicle and cannot recover in this case; but, if such trip was primarily for the attainment of some definite and tangible objective or purpose of Clifford Stoutner, then the plaintiff was not a guest in the Stoutner vehicle within the meaning of the law and would be entitled to prevail upon the establishment of all other prerequisites of recovery.

"If it be your finding that the trip in question was being made primarily for the purpose of seeking to obtain beer for the defendant, Clifford Stoutner, the fact that the said Clifford Stoutner was then under 21 years of age would not be material to any issue in this case and should be disregarded by you."

For various reasons both plaintiff and defendants took exceptions and defendants now claim error.

Defendants objected to the wording of special interrogatory #2. It was as follows:

"Do you find that the plaintiff has established by a preponderance of the evidence that the purpose of the trip involved in this case was for some definite and tangible objective or purpose of the defendant, Clifford Stoutner? (Answer 'Yes or 'No')."

The jury answered "Yes."

Defendants' claim of error is based on the use of the words "objective or purpose" in lieu of the word "benefit" as requested by defendants.

■ The court's instruction and interrogatory were obviously drawn in the light of statements we have approved.

We find no error.

VIII. In answer to a special interrogatory the jury answered that of the allowance in the verdict $3,000 was on plaintiff's claim for future medical, surgical and hospital expenses.

■ The trial court set aside this allowance. We believe the jury's finding was supported by the record.

Paragraph 10d, Division I of plaintiff's petition listed future doctor, hospital, x-ray and medical expenses as part of his damage for which he sought recovery.

Plaintiff suffered severe head injuries including skull fracture, depression of the contour of the frontal sinus and injury to his eyelids. He was treated by specialists in plastic and reconstructive surgery. In January 1966 a bone graft into the depressed defect of his forehead was performed. Later an attempt was made to improve the appearance and function of the eyelid. There was only modest success. Plaintiff is restricted in the closure of his eye. The surgeon testified there has been some resorption of the bone graft reducing the efficacy which would restore the contour. The result was less than optimum.

Further surgery for improvement was described. Three separate surgical procedures with separate hospitalizations would be involved. Surgical fees of $1,500 (a very rough figure) would be incurred. The referring and attending physician testified, among other matters, as to the value of further plastic surgery and estimated the surgery expense at $1,500 and hospital cost at $1,500. The jury obviously considered and accepted as established the need and cost of these items.

The jury's conclusion was within the issues as pleaded and was supported by the evidence.

The case is affirmed on defendants' appeal and reversed on plaintiff's appeal and remanded to the district court for entry of judgment for plaintiff in the sum of $10,000 pursuant to the verdict of the jury.

Costs are taxed to defendants.

Affirmed on defendants' appeal. Reversed and remanded on plaintiff's appeal.

GARFIELD, C. J., and LARSON, RAWLINGS and BECKER, JJ., concur.

STUART, MOORE, MASON and LeGRAND, JJ., dissent.

STUART, Justice (dissenting).

I am unable to agree with the majority opinion.

In my opinion the record is not sufficient to overcome the presumption that plaintiff

was riding in defendant's car as a guest. The only evidence here is that plaintiff and defendant, at defendant's suggestion, went in his car to get some beer out of plaintiff's car. In my opinion the jury could not properly find plaintiff was not a guest under this evidence. If there was evidence defendant's insistence overcame plaintiff's reluctance to make such a trip the situation would have been quite different. Zwanziger v. Chicago and Northwestern Railway Co., 259 Iowa 14, 23–24, 141 N.W.2d 568, 574.

MOORE, MASON and LeGRAND, JJ., join in this dissent.