Joseph BOGE, Appellant,

v.

JACK LINK TRUCK LINE, INC., and
John Fox, Appellees.

No. 54892.

Supreme Court of Iowa.

Sept. 19, 1972.

Fuerste & Carew, Dubuque, and Jenk, Jenk & Goen, Dyersville, for appellant.

Keyes & Crawford, Cedar Rapids, and Reynolds, Kenline, Roedell, Breitbach & McCarthy, Dubuque, for appellees.

McCORMICK, Justice.

Plaintiff appeals from denial of his motion for new trial after judgment upon jury verdict for defendants in this motor vehicle personal injury case. We reverse and remand.

The single vehicle accident involved occurred at about 1:00 p. m. December 4, 1966, on highway 20 near Galena, Illinois, when a Jack Link Truck Line, Inc., truck driven by defendant John Fox carrying plaintiff and his cattle to market in Chicago struck a bridge. Plaintiff's petition alleged the truck was hired to transport himself and his livestock to market for valuable consideration, and the trip was therefore for the mutual, definite and tangible benefit of himself and defendants. He predicated his personal injury claim on negligence.

Over plaintiff's objection the trial court refused to hold the guest statute inapplicable as a matter of law and required the jury to deny recovery if it found he failed to prove he was not a guest. Plaintiff also objected to jury submission in defendants' behalf of the sudden emergency doctrine.

Two questions must be answered: (1) Did plaintiff prove as a matter of law he was not a guest in the truck? (2) Was the doctrine of sudden emergency applicable in the facts of the accident?

I. *Plaintiff's status.* The relevant facts are undisputed. Plaintiff was a Dubuque County farmer who for 20 years raised high quality Angus cattle which he marketed regularly in Chicago. He had used defendant truck line to transport them for about 12 years. Defendant Fox had been the driver on several prior occasions. About 25 trips carrying an average of 22 cattle had been made in 1966.

Plaintiff testified he always rode in the truck prior to the accident as part of the arrangement for shipment. He desired to supervise and assist with carriage of the cattle to ensure they were carefully and safely transported, and he personally negotiated their sale in Chicago. If he could not get his price he wanted the truck available to take them home.

He and Emil Link, truck line president, shared concern about Mr. Fox's driving. Mr. Link told plaintiff to take the wheel if he believed it necessary. Plaintiff referred to Mr. Fox's problem as a tendency to get sleepy, and Mr. Link described it as a tendency to drink sometimes. On the morning before the trip involved here Mr. Link told plaintiff he thought Mr. Fox would be all right because the taverns had closed at midnight.

Mr. Link testified he knew plaintiff had ridden to market with his cattle as a customer for years and compared it to prior practice of owners accompanying their livestock on trains. There was no discussion about plaintiff riding on specific trips, but it was understood and intended by both parties to the transportation agreement that he had a right to accompany his cattle to market if he wished. The following testimony of Mr. Link is illustrative:

"Q. * * * It is something that is well known to a cattle owner who is shipping them to market that he can ride to market with his cattle

with your line as he can with other operators of business? A. That is right.

Q. And this is an added service of the trucking industry to owners of cattle sending them to market, is it not? A. Yes.

Q. Something that is inclined to draw and keep customers for the line? A. That is right."

Defendant Fox testified:

"* * * [O]ther owners would ride with me into Chicago. It was just a deal they always had, rode with their cattle. Even when they shipped them by rail, rode in the caboose. * * * This is a practice I had observed over the years * * *."

He also said:

"* * * [Mr. Link] always informed us to be nice or kind or considerate of owners of cattle riding in our truck to take care of customers."

The freight rate was the same whether the owner actually rode along or not. Defendants maintained they did not care if the owner rode or not. Mr. Link asserted there was no charge for the owner's ride. He also said although livestock shippers could ride, other persons were not supposed to.

Principles governing application of the Iowa guest statute, § 321.494, The Code, are well established. They are discussed in many cases. See, e. g., Wharff v. McBride, 183 N.W.2d 700 (Iowa 1971); Johnson v. Johnson, 174 N.W.2d 444 (Iowa 1970); Ross v. McNeal, 171 N.W.2d 515 (Iowa 1969); Jackson v. Brown, 164 N.W.2d 824 (Iowa 1969); In re Estate of Ronfeldt, 261 Iowa 12, 152 N.W.2d 837 (1967).

■ The statute exculpates owners and operators of motor vehicles from liability to "guest" occupants for damages caused by ordinary negligence. An occupant seeking recovery based upon ordinary negligence must overcome a rebuttable presumption of guest status by proof he was not a guest. Wharff v. McBride, *supra*, 183 N.W.2d at 703.

■ Plaintiff claims he was not a guest because he paid for his ride. We have long held one riding in a motor vehicle for the mutual, definite and tangible benefit of the owner or operator and the occupant is not a guest. Knutson v. Lurie, 217 Iowa 192, 251 N.W. 147 (1933).

The benefit involved must be a substantial factor motivating the owner or operator to furnish the transportation. In re Estate of Ronfeldt, *supra*.

■ Although the guest statute is liberally construed we do not extend it beyond correction of the believed evils which induced it. Zwanziger v. Chicago & N. W. Ry., 259 Iowa 14, 19, 141 N.W.2d 568, 571 (1966); Bilbro v. Bilbro, 256 Iowa 499, 503, 128 N.W.2d 282, 283 (1964); Thuente v. Hart Motors, 234 Iowa 1294, 1300, 15 N.W.2d 622, 626 (1944); 5 Blashfield Automobile Law and Practice (3d Ed.) § 211.5. It was enacted to protect the "good samaritan" host from risk of ordinary negligence claims by gratuitous passengers. Marean v. Petersen, 259 Iowa 557, 565, 144 N.W.2d 906, 911 (1966); Prosser, Law of Torts, (4th Ed.) § 34 at 187 ("[T]he theory * * * is that one who receives a gratuitous favor in the form of a free ride has no right to demand that his host shall exercise ordinary care not to injure him."); cf. Clark v. Clark, 107 N.H. 351, 356, 222 A.2d 205, 210 (1966) ("Legislative persuasion was largely in terms of guest relationships (hitchhikers) and uninsured personal liabilities * * *."). Passengers for hire are among those beyond the reach of the guest statute.

With these principles in mind we must decide whether the undisputed facts in this case permit a reasonable inference plaintiff was a guest in the truck. "Even when the

facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, a jury question is engendered." R.C.P. 344(f) (17). See Clapp v. Hester, 169 Cal.App.2d 558, 337 P.2d 525 (1959) (the issue of vehicle occupant status is generally one of fact, but if admitted facts give rise to but one reasonable conclusion the question becomes one of law); see also Gilliland v. Singleton, 204 Va. 115, 129 S.E.2d 641 (1963).

This was a commercial transaction bearing strong resemblance to livestock transportation contracts providing "free passes" to caretakers in use by carriers as early as 1859. See Norfolk Southern R. R. v. Chatman, 244 U.S. 276, 37 S.Ct. 499, 61 L. Ed. 1131 (1917). As in the instant case, carriers usually sought to avoid liability to caretakers on the basis the only charge was for freight and the drover rode free. They were uniformly unsuccessful. The drover was held to be a passenger for hire because his passage was one of the mutual terms of the contract for carrying the livestock. See, e. g., Norfolk Southern R. R. v. Chatman, *supra*; New York Central R. R. v. Lockwood, 84 U.S. (17 Wall.) 357, 21 L.Ed. 627 (1873); Miller v. Maine Central R. R., 125 Me. 338, 133 A. 907 (1926), and citations. This is still the rule:

"[A] person in charge of a shipment of livestock, and riding on a drover's pass *or pursuant to a similar arrangement, is a passenger for hire, regardless of whether the transportation vehicle is for passengers or freight, and even though the contract of shipment * * * refers to him as 'riding free' * * *.*" (emphasis supplied) 14 Am.Jur.2d Carriers § 756 at 234–235.

▮ That rule applies here. We hold as a matter of law plaintiff was a passenger for hire. This is because he paid for his ride rather then because of services to be performed for defendants on the journey. The payment made was a direct, tangible benefit to the truck line. It motivated the transportation. Defendants admit the transportation contract gave plaintiff the right to ride the truck to market with his cattle. His promise was to pay the freight rate. It does not matter that the charge was the same whether he actually rode or not. Payment for the livestock transportation was also payment for his option to ride. 1 Corbin on Contracts § 125 at 535 ("A single and undivided consideration may be bargained for and given as the equivalent of one promise or of two promises or of many promises."). Plaintiff did not ride free. This situation is obviously beyond the scope of the guest statute.

The transportation agreement in this commercial transaction necessarily obliged defendants to exercise ordinary care in carrying plaintiff as well as his cattle. Johnson v. Johnson, *supra*, and Miller v. Miller, 395 Ill. 273, 69 N.E.2d 878 (1946), are distinguishable because in those cases the shipper's transportation was not shown to be part of the agreement.

Plaintiff was not a guest in the truck, and the trial court erred in permitting the jury to find he was.

II. *Sudden emergency.* Defendant Fox testified freezing rain made road conditions bad when they left the Boge farm and worse as they drove east. When they entered Illinois he observed the highway had not been sanded and was "pretty slick." He was familiar with the road and had previously driven over it in worse weather. As they neared Galena, he told plaintiff, "It's getting bad. We are going to have trouble on the hills if it keeps up." He noticed it was getting hazardous and reduced speed. He thought they would "run into some ice and maybe start sliding." In the Galena area the highway was wet, slushy and slippery.

As he drove down a steep hill just outside Galena he geared down or braked to reduce speed to 12 to 15 miles per hour. At the bottom of the hill the highway was

relatively level for about 300 feet. Then there was an incline which curved slightly left to a bridge beyond which was a steep upgrade. He accelerated as he entered the incline and lost traction about 30 feet from the bridge. He tried to regain control by braking and accelerating but failed and struck the right hand bridge abutment. The impact tore the tractor cab off its frame and broke the frame in two. He subsequently pleaded guilty in an Illinois court to a charge of "driving too fast for conditions."

■ The relevant sudden emergency rule is well stated in an annotation at 80 A.L.R.2d 5, 43:

"That a motorist is placed in a situation of peril, by suddenly and unexpectedly coming upon or encountering * * * a slippery place in the road or pavement may warrant or require the giving of an instruction on the emergency rule."

Where the peril from slipperiness is not sudden and unexpected, the doctrine is unavailable. Sieren v. Stoutner, 162 N.W.2d 396, 400 (Iowa 1968); Brown v. Guiter, 256 Iowa 671, 678, 128 N.W.2d 896, 901 (1964), and citations.

■■ In this case defendant Fox knew, expected and predicted the peril in ample time to take precautions to avoid it. Defendants in effect contend the sudden emergency doctrine is nevertheless apposite because he had not previously skidded and did not know precisely when and where he would. However, it is sufficient that he had known for a long time road conditions including the place the accident happened were perilous. See Baker v. Wolfe, 164 N.W.2d 835, 839–840 (Iowa 1969), and citations; cf. Tennyson v. Bandle, 181 N.W.2d 687, 691 (N.D.1970). One cannot ignore known danger and then claim resulting disaster was sudden and unexpected simply because its exact time and place were not predicted. See Kane v. Loyd's American Line, 247 Wis. 145, 19 N.W.2d 296 (1945).

The doctrine of sudden emergency was inapplicable and it was reversible error for the trial court to instruct on it.

III. Other claimed errors involve matters not likely to occur on retrial and need not be decided.

Reversed and remanded.

All Justices concur.